[Criminal No. 651. Filed May 31, 1927.]

[256 Pac. 359.]

# GEORGE JANOVICH, Appellant, v. STATE, Respondent.

Mr. Bruce Stephenson, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Frank J. Duffy, Assistant Attorney General, for the State.

LOCKWOOD, J.—George Janovich, hereinafter called defendant, was informed against by the county attorney of Cochise county for the crime of murder. The jury returned a verdict of murder in the first degree, fixing the penalty at death, and, after a motion for new trial was made and denied, defendant was duly sentenced in accordance with the verdict and has brought the case before us for review.

The assignments of error raise but one question, which is as to the legality of the admission in evidence of a certain photograph. In order that we may discuss this, it will be necessary that we review briefly the facts in the case.

There is no conflict in the evidence on any material point. It appears therefrom that defendant was a miner of some thirty years of age, born in Jugo-Slavia, who had lived in the United States some seven years, and was so ignorant of the English language he testified through an interpreter. The deceased, Evana Janovich, was his wife. She was also born abroad and was about twenty-five years old at the time of her death. Some two months prior to the killing defendant went to California, looking for work. While there he became possessed with the idea that his wife was untrue to him, although there is nothing in the record to show his belief was founded on fact except his own statement as to the inferences which he had drawn from her conduct while he was away.

He returned to Bisbee and went to the house where his wife and their eighteen month old daughter were stopping, and along in the late afternoon took her for a walk. They were seen shortly before dark sitting near the edge of a railroad track in the out-

skirts of Bisbee. At that time deceased appeared very much worried over something, while defendant was holding an open knife in his hand and sitting sullenly beside her. Shortly thereafter he returned to the house and announced to its inmates, who were friends of the family, that he had just killed his wife.

The officers were immediately notified and they arrested defendant and went with him to where the body of deceased was lying. When questioned by the officers as to the reason for the killing, he stated, in substance, that he did it "because I like to." The body of deceased was removed to the undertaking parlors, cleansed and a photograph thereof taken, showing the nature of the wound which caused her death.

The defendant raised the general issue of not guilty. On the trial of the case the state proved the identity of the deceased and the nature of the wound by oral testimony, and then attempted to offer in evidence the photograph. To this defendant objected, on the ground that, since neither the identity of the deceased nor the cause of death were in question or would be put in question by him, the photograph was inadmissible, as its only purpose and effect would be to inflame the minds of the jury.

The county attorney insisted, first, that the state could not be limited in the proof of the identity of the deceased and the cause of death to oral testimony, but had the right, in addition, to show it by any physical exhibits, including photographs, and, second, since the nature of the wounds might have a bearing on the atrocity of the crime, the jury, which, under the law in Arizona, fixes the penalty in a case of murder in the first degree, had the right to see as well as to hear what their exact character was. Both counsel for defendant and for the state have cited to us a number of cases bearing on this question. We think the correct rule of law on the

use of exhibits in cases of this kind is well laid down in *State* v. *Moore*, 80 Kan. 232, 102 Pac. 475, wherein the court says:

"Several witnesses who were present described all that occurred at the shooting, and a physician who examined the body of the deceased after death described the location, extent, and effect of the wounds inflicted. Therefore it is argued that the evidence afforded by the jacket was wholly immaterial and unnecessary. The jacket supplied competent proof of relevant and material facts, and it is not for appellant to say how much proper evidence shall be produced against him. Especially is this true when he is standing upon all his rights under a general plea of not guilty. Perhaps all the eyewitnesses need not have been examined, but appellant had no right to insist that the state be limited to one or two or three of them. Perhaps the physician's testimony might have been confined to matters not proved by the jacket, but it could not be rejected because of the duplication. The inanimate garment told clearly and truthfully the story of a woman shot twice in the back, and hence, by legitimate inference, maliciously, willfully, deliberately, premeditatedly, and without justification or excuse. It had a rightful place among the accusing witnesses, none of whom could be set aside at appellant's option because they were numerous.

"It is argued that the introduction in evidence of the dead woman's bloody jacket destroyed the mental poise of the jury by riveting their minds upon a scene of carnage, to the exclusion of any calm consideration of appellant's sanity, the only matter finally disputed by way of defense. The state rested under the necessity of establishing a tragedy involving the violent death of a human being from mortal wounds deliberately inflicted with malice aforethought —a thing most likely to include some blood along with the wickedness, perhaps, too, the terrifying report of pistol shots in a peaceful street on a Sunday just after church, the piteous appeals for life, and the agonized death screams of a defenseless woman as she is being shot down, and other shocking things.

Such a subject is never a nice one to investigate. Any of the details have a decided tendency to horrify and to appall, but a court cannot arrange for lively music to keep the jury cheerful while the state's case in a murder trial is being presented, and grewsome evidence cannot be suppressed merely because it may strongly tend to agitate the jury's feelings. In the case of *Turner* v. *State*, 89 Tenn. 547, 15 S. W. 838, a section of the murdered man's ribs and vertebra was introduced in evidence. Objection was made because the object was calculated to inspire the jury with such horror as to influence their verdict. The purpose of the evidence was to show the direction and lodgment of the bullet, and it was held to be clearly admissible. In the case of *State* v. *Wieners*, 66 Mo. 13, the bones of the vertebral column of the deceased were exhibited to the jury. The killing was admitted, and the coroner had described the precise location of the wound and the direction of the bullet. The court said: 'It served to show to the jury the attitudes and relative positions of the parties when the shot was fired. It was not an unnecessary parade of the bones of the dead man to excite prejudice against his slayer, but was legitimate and proper evidence, and a party cannot, upon the ground that it may harrow up feelings of indignation against him in the breasts of the jury, have competent evidence excluded from their consideration.' Innumerable cases might be quoted to the same effect. Generally, physicial objects, which constitute a portion of a transaction, or which serve to unfold or explain it, may be exhibited in evidence, if properly identified, whenever the transaction is under judicial investigation.

"Appellant has cited some cases in which it seems to be indicated that the exhibition of bloody garments serves no purpose when the condition and location of wounds made through them have been described by witnesses. This court prefers to abide by the well-established rule that, ordinarily, whatever the jury may learn through the ear from descriptions given by witnesses they may learn directly through the eye from the objects described. *State* v. *Stair*, 87 Mo. 268, 273, 56 Am. Rep. 449. Of course spec-

tacular exhibitions may be framed for the purpose of arousing prejudicial emotions, and all such improprieties should be thwarted or promptly suppressed. The production of real evidence should not be permitted to exaggerate, and should not be allowed, through cunning presentation, to stir up passion or unduly excite sympathy or pity, and so lead the jury to act upon sentiment, instead of proof; but the proceeding is always under the control of the trial judge, who has authority to confine the use of such evidence to proper purposes and to regulate the time, manner, and extent of its presentation, and his discretion will not be interfered with unless abused with prejudicial consequences. *The chief objection to the exhibition of weapons, wounds, bloody clothing, and the like is that the jury may be led to associate the accused with the atrocity under investigation without sufficient proof.* Prof. Wigmore disposes of this objection in the following way: 'No doubt such an effect may occasionally and in an extreme case be produced, and no doubt the trial court has a discretion to prevent the abuse of the process; but, in the vast majority of instances where such objection is made, it is frivolous, and there is no ground for apprehension. Accordingly, such objections have almost invariably been repudiated by the courts—citing many cases. Wigmore on Evidence, vol. 2, par. 1157, p. 1354." (Italics ours.)

The italicized portion of the quotation states correctly the reason why the exhibition of physical objects connected with the killing is considered objectionable in some cases. In the case at bar this objection does not apply. The killing was admitted by the defendant on the stand, and the only excuse he offered was that, after deceased had admitted certain misconduct on her part before her marriage, her denial of any wrongful acts while he was away "is why I got mad and killed her." This statement affords no legal justification or excuse for his conduct, but was apparently offered to show a moral provocation which should reduce the penalty. Under

the undisputed evidence no other verdict but murder in the first degree could have been returned by a conscientious jury. The only point on which there could have been a difference of opinion was as to the penalty, and we think the photograph in question was proper to go to the jury to assist them in determining whether there were extenuating circumstances as contended by defendant, or the murder was of so atrocious a nature as to merit the severer penalty provided by law.

The defendant admittedly produced the condition, the sight of which in the photograph he claims so prejudiced the jury that it chose the higher penalty. Since that condition was legitimate evidence for both reasons given for its introduction by the county attorney, defendant may not complain of its possible effect. For these reasons the court did not err in the admission of the photograph objected to.

No other objections were raised by the assignments of error. Notwithstanding this fact, in view of the gravity of the penalty, we have examined the record for fundamental error. It appears that the information properly charges the crime of murder in the first degree, the minute entries show that the proceedings of the trial court were in all respects regular, and the instructions were as favorable to defendant as they could possibly have been under the evidence in the case.

Such being true, and the evidence showing without contradiction that defendant without any legal justification or excuse was guilty as charged, we have no other option than to affirm the judgment, and it is so ordered.

ROSS, C. J., and McALISTER, J., concur.