HELEN A. JURMAN, EXECUTRIX OF THE ESTATE OF JULIUS J. JURMAN, DECEASED, PLAINTIFF-APPEL- LANT, v. SAMUEL BRAEN, INC., A NEW JERSEY COR- PORATION, AND DOMINICK GALLITANO, DEFEND- ANTS-RESPONDENTS.

Argued October 13, 1965—Decided July 21, 1966.

*Mr. John P. Holly* argued the cause for appellant.

*Mr. George D. McLaughlin* argued the cause for respondents (*Mr. McLaughlin,* attorney; *Mr. Peter J. McDonald,* of counsel and on the brief).

The opinion of the court was delivered by

HALL, J. The plaintiff's decedent lost his life in a collision between the car he was driving and a panel pick-up truck owned by the defendant corporation and operated by its employee, the defendant Gallitano. The accident occurred in daylight at an intersection in the residential area of Hackensack where there were no lights or signs controlling traffic. The decedent never regained consciousness and Gallitano was the only other eyewitness. The proofs at the trial on the basic issues of negligence and contributory negligence of the respective drivers and of proximate cause were necessarily very meager. Gallitano was called by the plaintiff and gave his version of the accident. The only additional evidence was circumstantial, relating to the locale, the point of impact and the position of the vehicles after the crash. Defendants' motion for involuntary dismissal at the end of the plaintiff's case was denied and they then rested without presenting any witnesses.

Plaintiff had a verdict from the jury for $75,000 for wrongful death plus a small sum for damage to the automobile. No cause of action was found on the counterclaim for damage to the truck. The Appellate Division reversed and remanded for a new trial. 87 *N. J. Super.* 301 (1965). It decided there was plain error, *R. R.* 1:5–3(c), by reason of the inclusion in the charge to the jury, without objection by the defendants, of the instruction that "the law presumes that at the time and place in question the decedent was using due care when he drove his car into the intersection." We granted certification on the plaintiff's application. 45 *N. J.* 31 (1965).

At the outset we ought to say that we find no merit in defendants' suggestion that the reversal should be sustained on the basis of other claimed trial errors. We are satisfied there are none which rise to that magnitude. The principal question before us thus comes down to the correctness of the conclusion of the Appellate Division. Since our conviction is that, under all the circumstances, there was no reversible

error in the charge, we shall also have to deal with a further question raised by the plaintiff, not reached by the Appellate Division, concerning the apportionment of the wrongful death recovery between the decedent's widow and daughter.

I.

*R. R.* 1:5–3(c), applicable also in the Appellate Division by *R. R.* 2:5, authorizes the appellate court to consider "plain errors affecting substantial rights of a party" urged on appeal, though not raised at the trial level. The standard thereby imposed is to be considered with that set forth in the preceding subsection, *R. R.* 1:5–3(b) controlling appellate action where the error complained of was called to the attention of the trial court. Even in that case—the usual one since objection below is ordinarily vital to ground appellate review—the trial result shall not be disturbed "unless a denial of the relief sought appears to the court to be inconsistent with substantial justice." Obviously, a more stringent criterion is intended to justify overlooking the importance of the opportunity of the trial judge to prevent or correct error before it may endanger a judgment or unnecessarily extend the litigation.

We have always made it clear that the plain error remedy will be sparingly employed, not casually invoked. *Ford v. Reichert,* 23 *N. J.* 429 (1957). The strict basis for its proper application has been frequently stated. "It is not the discovery of an error that is merely plain, *i. e.,* apparent, distinct, undisguised, that warrants a nullification of the judgment. It must be one that prejudicially affects the substantial rights of the aggrieved party." *Valls v. Paramus Bathing Beach, Inc.,* 46 *N. J. Super.* 353, 358 (*App. Div.* 1957). Recently this court put it this way, in treating specifically of a claim of plain error in a charge: "Such error exists when the language employed by the trial judge in guiding the deliberations of the jury constitutes legal impropriety affecting the substantial rights of the party affected

of sufficiently grievous nature to justify notice by the review-
ing court and *to convince the court that, of itself, the error
possessed a clear capacity to bring about an unjust result."*
*Vespe v. DiMarco,* 43 *N. J.* 430, 435–436 (1964). (Empha-
sis added) The underlying philosophy is that "a manifestly
unjust result shall not be ordered because of the oversight of
the advocate." *In re Appeal of Howard D. Johnson Co.,* 36
*N. J.* 443, 445 (1962). Conversely, however, "[o]versight
and inadvertencies of the court deemed to be harmless and
unimportant by the attorney at the trial cannot without dili-
gent objection be normally exaggerated on appeal. In such
exigencies a degree of passive indifference, if not acquies-
cence, is inferred." *Valls v. Paramus Bathing Beach, Inc.,
supra* (46 *N. J. Super.,* at *p.* 357).

In the case before us, it may be observed that the very
experienced defense counsel, in taking no exception to the
charge, may well have thought at the time that it was not
erroneous, or at least not prejudicially so, to tell the jury of
the existence of a presumption of due care on the part of a
decedent. He referred to it in his motion for involuntary
dismissal at the end of the plaintiff's case, and in his summa-
tion told the jury, "There will be talk, perhaps, to you that
there is a presumption that Mr. Jurman was driving prop-
erly." Thereafter he argued in effect that the evidence
demonstrated it had been overcome and showed the decedent
to have been negligent.

The appropriate appellate inquiry where plain error
is claimed thus is to determine both whether there was re-
versible error at all and whether a manifestly unjust result,
or the clear capacity for it, came about by reason thereof. The
latter necessarily involves a consideration of the whole case.
Where the alleged error relates to the charge, the instruc-
tions have to be examined at least as closely as established
principles would require if objection had been made pursuant
to the mandate of *R. R.* 4:52–1. Those principles dictate
that, while the court's instructions must outline the function
of the jury, set forth the issues, correctly state the applicable

law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them (*Post v. Manitowoc Engineering Corp.*, 88 *N. J. Super.* 199, 207 (*App. Div.* 1965)), reversible error does not exist if, when the charge is considered sensibly and as a whole, a lay jury would have understood the salient features and would not have been confused or misled even though part, standing alone, might be regarded as incorrect. *Stackenwall v. Washburn*, 42 *N. J.* 15, 26-27 (1964).

█ So reviewing the evidence and the instructions here, we are satisfied that any error in charging a presumption of due care did not produce either the capacity for or the actuality of an unjust result. From a factual viewpoint, the proofs on the vital issues of negligence, contributory negligence and proximate cause, though sparse and leaving much to inference, were such as to permit the jury with entire propriety to reach the verdict it did without considering the presumption that the decedent was exercising due care for his own safety. (It also could, with equal appropriateness, have reached the opposite result.)

Gallitano, in the truck, was proceeding west, up a grade. To his right, the decedent was coming south on the intersecting street. As we have said, there was no traffic light at the corner and neither street was a "stop street". An apartment house was located on the northeast corner 30 or more feet from each street, but it was inferable that the setback was not deep enough to permit a long view by either driver down the street he was about to cross. The collision of the front of Gallitano's truck with the left side of the decedent's car occurred, with considerable force, in the northwest quadrant of the intersection, *i. e.*, the front of the former's vehicle had passed the center line of the intersecting street while the decedent's automobile had not yet reached that point. There were no skid marks at the scene, leading to the permissible, though not necessarily exclusive, inference that neither driver had seen the other for any appreciable time before the crash. Gallitano testified that he was moving in second gear at 15

miles per hour and that he made but one observation to his right as he approached the intersection. This was made when he was 50 feet away and he saw nothing approaching within the 75-foot distance his view permitted. His somewhat unclear testimony as to when he first saw the decedent is best recounted in the Appellate Division's summary:

"He then proceeded into the intersection without further observation, and when he reached the center, 'out of the shadow of [his] eye' he saw a car coming 'full speed.' It was about three or four feet away, 'so close [he] couldn't estimate.' This was the first time he saw the Jurman car. He said also that when he first observed the car it was 'right close' to Essex Street and was 'maybe' the length of 'one or two cars' away. Again he said it was 'right in front' of him and that the accident happened a fraction of a second after he first saw it." (87 *N. J. Super.*, at *pp.* 305–306)

The jury could find that reasonable prudence required him to make a further observation before entering the intersection. It could then properly conclude that even though the decedent was contributorily negligent in entering the intersection at an unreasonable speed, without making reasonable observation himself, and with his car not under sufficient control to make any necessary stop, Gallitano's negligence in the matter of observation for cross traffic was nevertheless the proximate cause of the accident on the theory that if he had used due care in this respect, he could have been reasonably expected to stop his slower-moving truck in time to avoid a collision. *Pangborn v. Central Railroad Co. of N. J.*, 18 *N. J.* 84, 100–103 (1955).

The body of the judge's original charge was adequate to guide the jury in this case, considering the unusual nature and extent of the evidence. He told the jury that they were the sole judges of the facts and that it was their function "to determine what is the credible, believable, accurate testimony", in the evaluation of which they might take into consideration, among other things, the interest of any witness in the outcome of the trial. He very simply stated the definition of negligence and contributory negligence, and, relating it to

the factual situation involved, instructed that the jury was to decide whether each driver was operating his vehicle, in approaching the intersection, as an ordinary prudent person would. He clearly pointed out that "for negligence to be recoverable or contributory negligence to be a bar to recovery," either must be the "proximate cause" of the occurrence, defining the term as "that affirmative act or omission which directly brings about the happening complained of and in the absence of which the happening would not have occurred." He was specific on the matter of the burden of proof—"proof by a preponderance of the evidence, by the greater weight of the credible testimony"—saying plainly that the plaintiff had that burden as to defendants' negligence and that defendants held it as to plaintiff's contributory negligence. No mention was made of any presumption of any kind.

At the conclusion of the charge, the judge took up plaintiff's requests and it was then that the presumption of due care made its appearance, in the form quoted in full in the Appellate Division opinion. 87 *N. J. Super.* 307. It will be noted that it is baldly stated, without relation to what the judge had previously told the jury about the burden of proof or without indication as to what effect it was to be given and how it was to be considered in the light of contradictory evidence or inferences. Apart from anything else, the extreme importance of incorporating granted requests to charge into the body of the instructions, rather than by separate statement out of context after the charge has been completed, is well illustrated. Without regard to its validity as a matter of law, the instruction was certainly confusing in the then posture of the charge.

■ Before referring to the jury's request for further instructions and the court's supplementary charge, we ought to say that we agree with the Appellate Division that, in and of itself, an instruction as to a presumption of due care on the part of a decedent at the time of an accident is error as a matter of law. (Whether it is reversible error in a particular

case is another matter.) We mention the question since it has never been passed upon by this court.

This presumption, so-called, and its effect as far as the jury is concerned, has received varied treatment among the states. See, *e. g.,* Annot. "Presumption-Controverting Evidence," 5 *A. L. R. 3d* 19, 69–72 (1966). Sometimes the view taken depends on whether the jurisdiction places the burden of proof of contributory negligence on the defendant, as in New Jersey, or imposes on the plaintiff the burden of establishing his freedom from negligence. In the former case, this presumption, in contrast with most, operates against the party already having the burden of persuasion as well as the burden of producing evidence. Professor Morgan summarized the situation in 1 *Basic Problems of Evidence* 39 (1954):

"A few courts have held that the presumption should be given some effect, and that this can be done only by telling the jury of its existence. Other courts have said that the utmost force of a presumption is spent when the burden of persuasion is fixed, and that when that burden is already fixed without the aid of a presumption, there is nothing left for it to do. Whether it is prejudicial error to tell the jury about it depends upon the circumstances of the case."

It can well be said that such a presumption, since it amounts to a double use of the same thing, is not a genuine presumption at all, but only an anomaly not worthy of perpetuation.

This is essentially the view soundly taken by Judge Conford in *Heye v. Alpert,* 82 *N. J. Super.* 58 (*App. Div.* 1964), certif. denied 41 *N. J.* 601 (1964), decided after the trial in the instant case and relied upon by the intermediate appellate tribunal here. 87 *N. J. Super.,* at *p.* 308. Judge Conford said:

"But analysis discloses that in jurisdictions where, as in New Jersey, it is the burden of the defendant to plead and prove by a preponderance of the evidence the plaintiff's contributory negligence and its proximate causation of the accident, the so-called presumption is not a true presumption but simply another form of statement of the elementary proposition that the decedent's contributory negligence will not be presumed at the outset of the proofs (even as the de-

fendant's negligence) and that the defendant has the burden of proof on the issue. However, the latter has an issue for the jury on the point if the proofs adduced by either side permit a reasonable inference of absence of due care by the decedent. See the excellent discussion of this anomalous presumption in *Hutton v. Martin*, 41 *Wash.* 2d 780, 252 *P.* 2d 581 (*Sup. Ct.* 1953)." (82 *N. J. Super.*, at *p.* 62).[1]

We are impressed with thoughts in the same tenor expressed by Dean Falknor in "Notes on Presumptions," 15 *Wash. L. Rev.* 71 (1940), in discussing the subject in the light of the law of the State of Washington thereon at that time. His analysis is worthy of quotation:

"While recognizing that 'numberless propositions' heterogeneous and non-comparable in kind' go under the name of presumptions, I believe it is justifiable to assume at the beginning of this discussion that, normally, a presumption (at least one that fits into the usual judicial language about presumptions) operates in favor of the party upon whom rests the burden of persuasion, and that the office of the presumption is to relieve that party of his concomitant duty to go forward with the evidence in the first instance.

\*         \*         \*         \*         \*         \*         \*         \*

But where the burden of persuasion on the issue of contributory negligence has been cast upon the defendant (as it is in this jurisdiction), plaintiff's action 'may go forward in the first instance' without the necessity of any evidence in plaintiff's behalf on the issue. Consequently, there is no necessity for the use of a presumption. \* \* \* The logic of the situation makes it a good guess that the presumption of due care had its origin in jurisdictions where the burden of proof is upon the plaintiff. All of which makes it appropriate to suggest again that the 'presumption of due care,' operating as it does against rather than in favor of the party upon whom rests the burden of persuasion, is anomalous in a jurisdiction such as this, that it is not a genuine presumption, and that the difficulty, if not the confusion, which has resulted in attempting to apply to this 'presumption' a

---

[1] *Heye* appears to be the first case in this State where the presumption was fully considered and treated from the standpoint of consideration by the jury. Earlier cases in which it was mentioned involved the propriety of granting or denying motions for a nonsuit or directed verdict on the ground that the decedent was contributorily negligent as a matter of law. *E. g., Danskin v. Pennsylvania R. R. Co.,* 79 *N. J. L.* 526 (*E. & A.* 1910). Today meaningful use of the term may well be doubted even in that situation for "\* \* \* unless the contributory negligence is a necessarily exclusive conclusion from the facts, there is no warrant for removal of the issue from the consideration of the jury." *Seipel v. Sevek,* 29 *N. J.* 593, 597 (1959).

body of doctrine rationally applicable to genuine presumptions only, persuasively argues that it might well be forgotten, at least in instructions to juries.

\*       \*       \*       \*       \*       \*       \*       \*

The objection to stating to the jury the 'presumption of due care' rests on considerably more than the theoretical anomaly. In the first place, as has already been suggested, such a presumption tends to increase the defendant's burden of proof without a determination that it ought to be increased. Secondly, and what may be more important, there is the difficulty of conveying to the jury in simple, accurate and understandable language the nature of a 'presumption', how long it persists and how much evidence it takes to overcome it. 'The baffling nature of the presumption,' says McCormick, 'as a tool for the art of thinking bewilders one who searches for a form of phrasing with which to present the notion to a jury.' This difficult problem is inevitable and must be faced and resolved when the court is dealing with a genuine presumption, *i.e.*, one operating in favor of the party having the burden of proof. However, because of its inherently difficult character, the problem ought not be invited; it ought to be avoided whenever reasonably possible. And generally speaking, it may be avoided, quite rationally, by declining to instruct on a 'presumption', such as the 'presumption of due care', operating against the party having the burden of proof." (15 *Wash. L. Rev.*, at *pp.* 74, 76, 82).

■ Our conclusion is that the presumption of due care is not a genuine one, that it does not deserve recognition, that it certainly has no place in jury instructions, and that a decedent is adequately protected by an appropriate charge as to the burden of proof of contributory negligence.

The question remains whether the Appellate Division was correct in holding that charging the presumption amounted to plain error requiring a reversal and new trial. This brings into play the matter of the jury's request for a rereading of the portion of the charge "concerning the presumption of Mr. Jurman's prudent driving." and the judge's supplemental instructions in response thereto. The Appellate Division felt that the request indicated the jury obviously attached importance to the presumption, that the erroneous instruction thereon was prejudicial because the jury was permitted to treat the presumption as evidence counter-balancing proof of contributory negligence, and that the supplemental charge

did not lessen the harmful effect of the error. We cannot reach the same conclusion.

The judge did not reread the instruction concerning the presumption of due care, but simply told the jury that there is "a presumption that a person was not negligent and was acting lawfully until that presumption is overcome by proof to the contrary." This did not satisfy one juror, so the court expanded at some length, as fully quoted in the opinion below (87 *N. J. Super.*, at *pp.* 310–311), to the effect that negligence is never presumed and that there is a presumption against it. He made no mention of the presumption of due care and concluded plainly and strongly that

"\* \* \* the burden is upon the person asserting that person negligent or asserting that a person is contributorily negligent, to prove the negligence, to prove the contributory negligence, prove facts in support of the contention of negligence or contributory negligence, prove such facts on which a jury may infer from those facts that they find there was negligence or contributory negligence."

This further instruction, with its proper emphasis on the burden of proof, was adequate we think to put the matter of the jury's resolution of the issue of contributory negligence in true perspective. With that plain and forceful exposition as the last word from the judge, we do not think it can be said that the jury still felt, if it ever did, that the presumption of due care could be used as evidence to balance against proof of contributory negligence. We believe any error in the original charge, even if thought to be prejudicial, was sufficiently cured. At the very least, there was no longer any plain error for, as we have pointed out, the verdict reached was not an unjust one. The judgment of the trial court is therefore entitled to reinstatement.

## II.

The decedent left surviving his widow and an eight-year-old daughter. Both were wholly dependent upon him and they were his only dependents. They were also his next

of kin who would have been solely entitled to take his personal property had he died without a will. *N. J. S.* 3A:4–2. So in assessing damages for wrongful death, their pecuniary loss was the sole measure. *N. J. S.* 2A:31–5. Plaintiff's proofs at trial were so presented and the jury instructed accordingly. The evidence did not attempt to demonstrate the loss of each separately, but showed the decedent's total take-home income to be about $7000 per year, estimated $1500 of that as required for his own support, and treated the difference as the joint annual pecuniary loss of the two dependents. The mortality table was introduced to show the decedent's life expectancy and the present amount necessary to compensate for that loss over that period, in order to give the jury a basis for arriving at a lump sum award.

After the verdict plaintiff moved before the trial judge through her trial counsel for apportionment of the $75,000 amount between the widow and daughter. (Plaintiff is the widow prosecuting the death action as executrix. *N. J. S.* 2A:31–2. The plaintiff in a death action, who is acting in a representative capacity, has the obligation to distribute the recovery to those entitled.) The child did not have separate counsel at the motion hearing and no guardian *ad litem* was appointed. The defendants, of course, had no interest in the application, so in effect it was made *ex parte*.

The section of the death act dealing with the persons entitled to the amount recovered and the apportionment thereof is *N. J. S.* 2A:31–4, which, after the latest amendment by *L.* 1960, *c.* 194, reads as follows:

"The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical

and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered."

The plaintiff's application was based on the second sentence of the section and it was urged that an apportionment of 90% of the verdict to the widow and 10% to the daughter would be fair and equitable. This was on the theory that the decedent's obligation of support of the eight-year-old child until majority or prior emancipation, which was the extent of her pecuniary loss from her father's death, had devolved upon the widow, who was legally required to provide it from her assets, and that the child's own funds could not be utilized as long as the mother was herself able to furnish it. See 6 *New Jersey Practice (Clapp, Wills and Administration)*, § 1078, *pp.* 666–667; *N. J. S.* 3A:20–1. An offer to present testimony in support of the suggested apportionment was refused by the judge. He took the view that, where there was only one dependent child, the first sentence of the section controlled and that the second sentence could only be utilized where a class of dependents comprised more than one member. Consequently he entered an order in strict accordance with the statute of distribution, *N. J. S.* 3A:4–2, awarding one-third of the recovery to the widow and two-thirds to the child.

Plaintiff cross-appealed therefrom, asking that the order be set aside and requesting the appellate tribunal either to make an appropriate apportionment itself or to remand the matter to the trial court with instructions. The Appellate Division, by reason of its reversal of the judgment, found the question moot, but observed that it felt the apportionment made did not follow the statute. 87 *N. J. Super.*, at *p.* 312. In view of our reinstatement of the trial judgment, this additional phase of the case requires our consideration. It should be noted that the matter is still not adversary, there being no appearance or brief in support of the trial court's conclusion.

While the issue before us is an aspect of novel impression of a difficult general subject, it is actually very narrow and we need not expand our discussion beyond its precise confines, particularly since there is no opposing presentation and no factual record. The trial court decided the question as a pure matter of construction, on its face, of the present version of *N. J. S.* 2A:31–4. In view of the fact that the widow and daughter here were wholly dependent on the decedent and his sole dependents, as well as the only persons entitled to take his intestate personal property, we are not concerned with whether any of the knotty problems which have plagued our courts under prior versions of *N. J. S.* 2A:31–4, particularly in its relation to *N. J. S.* 2A:31–5, in cases where the family situation differed from this one, have been answered or altered by virtue of the 1960 amendment to section 4. See, *e. g., Cibulla v. Pennsylvania-Reading Seashore Lines,* 25 *N. J. Misc.* 98, 50 *A. 2d* 461 (*C. P.* 1946); *Turon v. J. & L. Construction Co.,* 8 *N. J.* 543 (1952); *Carianni v. Schwenker,* 38 *N. J. Super.* 350 (*App. Div.* 1955).

Although *N. J. S.* 2A:31–4 is very inartistically drawn, we are convinced that the Legislature intended the authority given in the second sentence, to fairly and equitably discriminate between dependent beneficiaries in the distribution of the recovery, to extend to all such persons, and not to obtain just between those of a particular class thereof. We therefore feel the trial court erred in deciding that the provision would only be applicable where there was more than one member of a single class of beneficiaries and so not available in the case of a wholly dependent widow and single child.

In effect, we think this second sentence of section 4 has to be read as a proviso to the first sentence, which generally directs division only among "the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same." We are moved to this view by comparison of the 1960 amendment with the form of the section before that enactment. It previously read:

"The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were not dependent on the decedent at his death, the remainder of the persons so entitled shall take the same as though they were the sole persons so entitled. If all or none of the persons so entitled were then dependent on him, they shall all take as aforesaid." (enacted in *Revised Statutes, Title* 2A, adopted by *L.* 1951, *c.* 344).

There seems to be no doubt that under this prior form, where, as here, all the persons entitled to share were dependents, distribution had to be made strictly in accordance with the statute of distribution. *Cf. Carianni v. Schwenker, supra* (38 *N. J. Super.* 350, 356). The amendment's removal of the second and third sentences of the prior version and the substitution of the present second sentence clearly seem intended to permit distribution in varying amounts and we can find nothing to indicate that such authority was not meant to apply as between *all* dependent beneficiaries. The trial court in essence decided the question under the prior-1960 form of the section and as if that amendment had not been made.

We believe this phase of the case should be remanded for a new hearing in the light of the construction of section 4 we have just outlined as the proper one. A guardian *ad litem* should be appointed to represent the interests of the child. The statute gives the court wide discretion in arriving at a fair and equitable apportionment geared to a particular family situation and the individuals involved. That discretion can only be properly exercised on the basis of facts, so full evidence should be presented on all aspects. We think it unwise now to comment further, beyond saying that the court's primary interest should be to assure the child's appropriate support and maintenance and that it undoubtedly has the authority to provide therefor as it deems best under the circumstances, notwithstanding the previously mentioned legal theory advanced by the plaintiff.

The judgment of the Appellate Division is reversed and that of the trial court reinstated, with costs to the plaintiff.

The order of the trial court apportioning the recovery is reversed, without costs, and the matter remanded to that tribunal for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.