456 P.2d 947

Joseph Paul KOVRIG and Frigid Fruit Express Co., also known as Frigid Food Express Co., Appellants,

v.

Catarina VASQUEZ and Juan H. Arzate and Theresa Arzate, his wife, Appellees.

Catarina VASQUEZ; Juan H. Arzate and Theresa Arzate, his wife, Cross-Appellants,

v.

FRIGID FRUIT EXPRESS CO., also known as Frigid Food Express Co.; Elven Shorter: Johnny A. Avechuco and Esther M. Avechuco, his wife, Cross-Appellees.

No. 2 CA–CIV 460.

Court of Appeals of Arizona.

June 26, 1969.

Rehearing Denied July 23, 1969.

---

**102**

Gust, Rosenfeld & Divelbess, by James F. Henderson, Phoenix, for appellants and cross-appellees.

Hughes, Hughes & Conlan, by Coit I. Hughes and John C. Hughes, Phoenix, for appellees and cross-appellants.

HATHAWAY, Judge.

In this appeal we consider problems raised in two consolidated lawsuits; one for wrongful death of appellee's husband, Rafael Vasquez, and the other for personal injuries suffered by appellees Arzate. Both suits grew out of a multi-vehicle accident in a severe dust storm on the Phoenix-Tucson Freeway, July 12, 1964. We have recently decided a related case, Arnold v. Frigid Food Express Company, 9 Ariz.App. 472, 453 P.2d 983 (1969), in which we described many of the details. We will not repeat the facts here except as necessary for this opinion.

Appellee Catarina Vasquez sought to recover damages for the death of her husband, Rafael Vasquez. Vasquez was a passenger in the Arzate's vehicle at the time of his death. Theresa Arzate, the deceased's daughter, was driving and her husband, Juan Arzate, was also a passenger in that vehicle. Both of the Arzates received severe burns and other personal injuries for which they seek recovery.

After the accident, the Arzate vehicle was found in the center median of the free-

way, between the northbound and southbound lanes; the fuel tank had ruptured and burned and there was considerable body damage to the car. The Arzates managed to get out of the vehicle before it burned or while it was burning. Vasquez's badly-burned body was found some distance away, behind another car in the center median.

Plaintiff-appellees sued several parties, some of whom were not served, in an attempt to include all drivers and owners of vehicles which may have been responsible for their injuries. Two of the defendants were Frigid Food Express drivers, Joseph Kovrig and Elven Shorter. Shorter was never served but counsel for Frigid Food Express answered on behalf of both drivers. A conditional cross-appeal is brought because the trial court denied a defense motion to strike the appearance for Shorter but refused to strike Shorter's answer when he failed to appear for the taking of his deposition by the plaintiffs. 16 A.R.S., Rules of Civil Procedure, Rule 37(d). The trial court also awarded costs to Shorter and denied a motion by the plaintiffs for a new trial as to him. The cross-appeal is waived if we affirm.

The trial resulted in verdicts for the plaintiffs against the appellants, Kovrig and Frigid Food Express Company. Three questions are raised; the first is a direct attack on the verdicts, proposing that they were based upon passion and error alone because negligence on the part of Kovrig was never proved. Question II deals with the receipt into evidence of allegedly improper exhibits and Question III challenges an instruction given on behalf of plaintiff Vasquez.

## QUESTION I—NEGLIGENCE

█ The first contention, that negligence on the part of Kovrig was not proved at trial, is based upon allegations that neither breach of duty nor proximate cause was established. In Arnold v. Frigid Food Express Company, supra, we found sufficient evidence that Kovrig was negligent and we find that the evidence in this case supports the same conclusion. We consider next the element of proximate cause, viewing the evidence most favorably to plaintiffs.

Mrs. Arzate testified that she was driving slowly, because of the reduced visibility caused by the blowing dust. She suddenly saw a "green thing" in front of the car and stopped. Almost immediately, there was a slight impact, apparently from the rear, which shoved the car into the green object. She immediately turned to her father who was seated beside her and began to say, "Let's get out," or something to that effect. Juan Arzate, in the back seat, was asleep until this impact. Before Mrs. Arzate finished the word "out," there was another impact, this time severe, from the rear. Neither of the Arzates remembers anything material after this time. Neither saw any other vehicle strike their car, nor do they know when or how his or her injuries were inflicted. Neither remembers when nor where they got out of the car, nor any fire being in the car. Juan first remembers seeing his wife running up the center median, running after her, and stopping her. Theresa first recalls being in a hospital room.

Plaintiffs seek to support the verdicts with the following theory. The first, slight, impact was caused by a collision from the rear of the plaintiffs' car by the Lewandowski Mercury. That conclusion is based upon the assumption that Lewandowski's was the first vehicle on the scene after the Arzates entered and the fact that white paint, allegedly from the Arzate's car, was found on the hood of the Mercury. They next theorize that the Mercury spun into the low speed lane where it was struck by Kovrig. This second impact knocked the Mercury back into the Arzate car, accounting for the second, severe, collision, and the plaintiffs' injuries.

While that theory is not impossible, it is not supported in the evidence. The type of collision suggested would have pushed the Arzate car off the right side of the road. Instead, it went across two 13-foot travel lanes, a 4-foot emergency lane, and several yards into the center median. We

have concluded that the evidence presents a more plausible explanation of events, one which we assume the jury reached in finding for the plaintiffs.

There was only one vehicle at the scene which could have been the "green thing." That was a green and white pickup truck driven by Jesus Adame. The defendants concede that the jury could have reasonably concluded that the Arzate vehicle struck the pickup. There is no direct evidence showing how the Arzate car got from behind the pickup, across approximately 30 feet of paved highway and into the center median. Circumstantial evidence provides a reasonable explanation, however.

Kovrig testified that there was a light-colored car about 150 feet ahead of his truck as he approached the dust bank. It disappeared into the dust only seconds before Kovrig's truck entered. George Bickley and Kovrig both testified that, as they drove their vehicles into the dust storm, they saw a white car spinning across the highway from right to left. Kovrig's tractor-trailer struck a different white vehicle, one which had come to rest in the high-speed lane apparently after an earlier collision with the Lewandowski Mercury, which the Kovrig vehicle then struck broadside and overrode. By process of elimination, the jury could have identified the vehicle which Kovrig admitted hitting in the high-speed lane as plaintiffs' vehicle and the spinning car as one owned by a couple identified only as the Johnsons.

There were a total of nine passenger cars involved in the accident, several of which were white, partially white, or light in color. Bickley's Oldsmobile, the Arzate Ford, a Plymouth driven by Pearl Wightman, and Francis Arnold's Oldsmobile were solid white. The Johnson car, another Oldsmobile, was light blue or white in color. The Johnson car was found at the edge of the center median and partially in the high-speed lane. Only the Johnson Oldsmobile and the Arzate vehicle are unaccounted for as to their basic movements. Therefore, one of those two cars must have been the white car in the high-speed lane, which the Kovrig truck knocked toward the center median at the time it struck the Lewandowski car, and the other must have been the spinning car.

We believe that it is more reasonable to conclude that the spinning car was the one Kovrig was following, rather than the motionless white car which had been in collision with Lewandowski. Since the evidence shows that the Arzate car may have been at the scene for some time before Kovrig arrived, the jury could reasonably find that the white car which Kovrig was following was the one still in motion, i. e., the spinning car, and that it must have been the Johnson vehicle. This leaves only the conclusion that the white car blocking the high-speed lane was that of the plaintiffs. Kovrig admittedly collided with that car.

Although the white car in the high-speed lane had apparently been involved in a prior collision, which could have injured the plaintiffs, the "single injury" rule clearly applies due to the proximity of the collision between the plaintiffs' car and defendants' truck and any other collisions which may have occurred. Holtz v. Holder, 101 Ariz. 247, 418 P.2d 584 (1966). If Kovrig was negligent, the defendants are jointly and severally liable with any others who may have contributed to the plaintiffs' injuries. Holtz v. Holder, supra.

Kovrig testified that there was no fire in the white car before his truck struck it. Since the Arzates both received burns, the jury could have reasonably concluded that they were still in the car when it was struck by defendants' truck, that the fire was caused by that collision, and that their burns resulted therefrom. Such a conclusion is consistent with Juan's first recollection—trying to stop his wife as she ran up the center median, indicating they were still in the car after it was struck and thrown into the center median.

Vasquez's death presents a separate problem as to proximate cause because the testimony indicates that he died as a result of fire which was burning between a truck driven by defendant Shorter and

a car belonging to Dunnivan. His body was found at the edge of the center median, near the area where Kovrig's truck struck the two vehicles in the roadway. The jury could, therefore, have reasonably concluded that Vasquez, also, was still in the Arzate vehicle when it was struck by the defendants' truck, and that he was thrown out of the car at that time. There is also evidence which indicates that the fire by which his body was burned started under Kovrig's truck, spread to Shorter's truck, and then to Dunnivan and Bickley's cars in the center median. We conclude that there is sufficient evidence of proximate cause of the injuries to all three plaintiffs.

### QUESTION II—EVIDENTIARY MATTERS

Defendants contend that it was error to allow the use of a metal board with small magnetic cars thereon for illustrative purposes during trial. They contend that prejudice resulted because the models were not to scale, presenting an incorrect picture of the portions of the Arzate, Adame and Avechuco cars which extended into the low-speed travel lane. They also maintain that prejudice resulted from the fact that no record was made of the positions of the cars as they were placed on the board and that one witness was allowed to place a vehicle on the board even though he stated that he did not know the direction in which it was heading.

The use of exhibits for illustrative purposes is a matter which lies in the sound discretion of the trial court. Arnold v. Frigid Food Express Company, supra; O'Rielly Motor Company v. Rich, 3 Ariz. App. 21, 411 P.2d 194 (1966); Slow Development Company v. Coulter, 88 Ariz. 122, 353 P.2d 890 (1960). We find no abuse of discretion has occurred.

The defendants next contend that it was error to allow the introduction into evidence of a photograph of the front of the Kovrig truck with the Lewandowski vehicle under it. The photograph, plaintiffs' exhibit No. 10, was taken by the Arizona Highway Patrol after the fire was extinguished and originally showed 3 or 4 charred bodies protruding from the wreckage of the Lewandowski car. Defendants allege that the photograph is gruesome and serves only to inflame the jurors against the defendants. The bodies were marked over in black ink before the photograph was admitted into evidence. This is the only exhibit which clearly shows the location of the Lewandowski vehicle after the accident. It is relevant and we do not believe that its relevancy is outweighed by the obvious purpose of the ink marks. Janovich v. State, 32 Ariz. 175, 256 P. 359 (1927).

### QUESTION III—TRIAL COURT'S INSTRUCTION

The defendants challenge the following instruction:

"You are instructed that *where a person is killed by a violent injury and there are no eye-witnesses* there is a presumption that the decedent was exercising due care at the time.

"The presumption that the deceased exercised due care *may be overcome by proof of witnesses or facts and circumstances immediately surrounding the accident* from which fair and reasonable inferences may be drawn as to whether or not the deceased exercised reasonable care." (Emphasis added)

The instruction is questioned on the basis that the presumption was dispelled by contrary evidence. Our Supreme Court has stated the rule governing the disappearance of such presumptions as follows:

"In truth there is but one type of presumption in the strict legal meaning of the word, and that is merely a general rule of law that under some circumstances, *in the absence of any evidence to the contrary*, a jury is compelled to reach a certain conclusion of fact. But a presumption so declared by the law is only raised by the absence of any real evidence as to the existence of the ultimate fact in question. It is not in and of itself evidence, but merely an arbitrary rule imposed by the law, to be applied in the ab-

sence of evidence, and whenever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to follow the usual rules of evidence in reaching their ultimate conclusion of fact." Seiler v. Whiting, 52 Ariz. 542, 548, 84 P.2d 452, 454 (1938).

The court in *Seiler* further stated, quoting from Professor Wigmore, that since presumptions are not evidence they should never be presented to the jury to be weighed against contrary evidence. Furthermore, the presumption disappears whenever prima facie contrary evidence is introduced, prima facie evidence being defined as "* * * sufficient evidence upon which a party would be entitled to recover, providing his opponent produced no further testimony. * * *" (52 Ariz. at 549, 84 P.2d at 455.) See also Helton v. Industrial Commission, 85 Ariz. 276, 336 P.2d 852 (1959).

In Silva v. Traver, 63 Ariz. 364, 162 P.2d 615 (1945), it was stated that "* * * the presumption in question disappears entirely whenever evidence has been introduced which would justify a jury in finding the nonexistence of the presumed fact * * *." (63 Ariz. at 372, 162 P.2d at 619.) See also In re O'Conner's Estate, 74 Ariz. 248, 246 P.2d 1063 (1952); In re Pitt's Estate, 88 Ariz. 312, 356 P.2d 408 (1960); Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288 (1965).

■ Assuming that the defendants are correct, and we believe the record contains evidence reasonably supporting their contention that Rafael Vasquez was not exercising reasonable care for his own safety, we conclude, however, that it was not reversible error under the circumstances of this case to instruct on the presumption of due care. The trial court also instructed on contributory negligence on the part of

Vasquez, and the instruction on the presumption states that it "* * * may be overcome by proof of witnesses or facts and circumstances immediately surrounding the accident * * *." Other courts considering the precise question have refused to reverse. Mecham v. Allen, 1 Utah 2d 79, 262 P.2d 285 (1953); Falkerson v. New York, New Haven, Hartford R. Co., 188 F.2d 892 (2d Cir. 1951). In Campbell v. City of Los Angeles, 28 Cal.App.2d 490, 82 P.2d 720 (1938), the court held that the instruction deprived the defendent of the defense of contributory negligence. No such prejudice occurred in this case, however, where the presumption was stated to be conditional upon a finding that there was no contributory negligence. The instructions are neither "directly contradictory" nor "confusing" as in Esquivel v. Nancarrow, 104 Ariz. 209, 450 P.2d 399 (1969).

■ The foregoing discussion is academic in any event since the jury should not have been instructed on the presumption, because the burden is on the defendant to plead and prove the plaintiffs' contributory negligence and its proximate causation of the accident, 16 A.R.S., Rules of Civil Procedure, Rule 8(d). To instruct on the presumption of due care is simply to reiterate that the decedent's contributory negligence will not be presumed and that the defendant has the burden of proving the issue. Jurman v. Samuel Braen, Inc., 47 N.J. 586, 222 A.2d 78 (1966). It is as superfluous as "* * * a handkerchief thrown over something also covered by a blanket." Brown v. Henderson, 285 Mass. 192, 189 N.E. 41 (1934) (concurring opinion). As we have already observed, we see no prejudice.

The judgment is affirmed. The cross-appeal therefore is waived.

MOLLOY, C. J., and KRUCKER, J., concur.