JOSEPH CAPUTO, PETITIONER-RESPONDENT, v. THE BEST FOODS, INC., DEFENDANT-APPELLANT.

Argued December 6, and 13, 1954—Decided January 17, 1955.

*Mr. Isidor Kalisch* argued the cause for appellant (*Mr. James J. Skeffington,* attorney).

*Mr. John A. Laird* argued the cause for respondent (*Mr. David L. Maltz,* attorney).

The opinion of the court was delivered by

HEHER, J.  The questions here concern the statutory allowances for the services of counsel and reimbursement for "reparative payments" after the rendering of the prescribed compensation for total and permanent disability, where the workman's disabling injury was the result of a third person's negligence, and the recovery in tort from the

third-party tortfeasor exceeded the employer's liability under the Workmen's Compensation Act.

The consequence of the injury was total blindness. The accident occurred September 1, 1949. The employer acknowledged liability under the Compensation Act and, by its insurance carrier, Travelers Insurance Company, commenced payment of compensation at the established weekly rate and the provision of medical service which aggregated $3,000 for the former and $3,829.50 for the latter, in all $6,829.50, when the third-party tortfeasor, American Chain & Cable Co., settled the workman's tort action for $60,000. Under their agreement with the workman, Messrs. Milton, McNulty & Augelli, the attorneys who prosecuted the tort action to a mutually satisfactory settlement, were paid a fee of $10,000 for their services; and the employer's insurance carrier was reimbursed for the compensation paid and medical charges incurred.

Seeking the "protection of a judgment," the workman, notwithstanding the employer's assumption of its statutory obligation, brought a proceeding for compensation on December 14, 1951. The employer answered that there had been full compliance with the mandate of the Compensation Act until the settlement of the third-party tort action for an amount in excess of the "compensation value of this case and no compensation is forthcoming from the respondent to petitioner." There was judgment for "total temporary disability, as paid, or 89 weeks," and "100% permanent total disability or 450 weeks at $25 per week, amounting to $11,250," and a direction that "at the expiration of the 450 week period, that is on and after December 15, 1959, payments shall continue in accordance with the provisions of R. S. 34:15–12, subject to such physical or educational rehabilitation as may be ordered by the Rehabilitation Commission and subject to periodic modifications as provided" by the act. An attorney's fee in that proceeding was refused, as not permissible under R. S. 34:15–64; and there was no apportionment of the expenses incurred in obtaining the third-party settlement. On the workman's appeal, the Hud-

son County Court affirmed the judgment, 27 *N. J. Super.* 571; and from the affirming judgment cross-appeals were taken.

The Appellate Division modified the judgment to allow the employer "reimbursement of its compensation liability in the amount of $17,304.50, less 33 1/3%," or $5,768.16, deemed payable by the employer to the workman for the services of his attorneys in the third-party recovery under the peremptory command of *R. S.* 34:15–40, as amended by *L.* 1951, *c.* 169, *p.* 646, even though the fee actually paid by the workman to his attorneys was at the rate of but one-sixth of the recovery. It was also adjudged, apropos of the subject matter of the employer's cross-appeal, that upon payment of the sum thus allowed the employer's liability for "further compensation payments for the statutory period of 450 weeks" should cease, "reserving to the petitioner, however, the right to make further claim not herein adjudicated for rehabilitation compensation payments by virtue of *R. S.* 34:15–12, upon the termination of the 450 week period." And the workman's counsel was given leave to apply to the County Court for "counsel fees for work done before" the Compensation Division, the County Court and the Appellate Division, "in accordance with *R. S.* 34:15–64 and 66." The opinion leading to this judgment is reported in 30 *N. J. Super.* 552 (1954).

The case is here by certification at the instance of the employer.

The basic contention is that *R. S.* 34:15–40, as amended in 1951, "does not authorize the tortfeasor to withhold *one-third* of the employer's exposure to compensation payment, but only *up to one-third* of the compensation theretofore paid and medical expenses incurred." The employer would limit the assessment of the attorney's fee to one-sixth of $6,829.50, the amount actually paid in reimbursement of compensation payments made and medical expenses incurred when the tort settlement was accomplished, or $1,138.25.

■■ We are concerned here not with what the Legislature meant to say, but the meaning of what it did say. The

reason and spirit of the correlated symbols of expression prevails over the strict letter. Once we have grasped the genius of the regulatory measure, we are in a fair way to assay the particular terms used to fulfill the legislative design. Here, the animating principle is beyond a peradventure the visitation upon the employer of his *pro rata* share of the burden of realizing the benefit of his statutory right of subrogation. Were there no third-party recovery, the primary obligation of compensation for the attendant disability would remain the employer's; and it would be manifestly inequitable and unjust to lay upon the injured employee the cost of a recovery that under the statute inured to the employer, not alone the reimbursement of payments actually made but also the extinguishment of the whole of the continuing liability. There can be no doubt that such is the principle of the statutory policy.

It is not "the words of the law, but the internal sense of it that makes the law." *Eyston v. Studd,* 2 *Plowd.* 459; 75 *Eng. Repr.* 695 (1574). The reason of the law, *i. e.,* the motive which led to the making of it, is one of the most certain means of establishing the true sense of the words. *Valenti v. Board of Review of Unemployment Compensation Commission,* 4 *N. J.* 287 (1950); *In re Roche's Estate,* 16 *N. J.* 579 (1954). In early English language usage, this was deemed the construction and application of the law according to the "equity of the statute"; but it will be seen from the case cited that, as is true of the present-day canons of interpretation, it was from the beginning a rule in aid of the legislative intention within the four corners of the expression, considered in the context of its socio-economic setting, *i. e.,* the sense and reason of the law. *Sutherland, Statutory Construction* (3d ed.), sec. 6001 *et seq.* The intention emerges from the spirit and policy of the statute rather than the literal sense of particular terms.

The statute under review, *R. S.* 34:15–40, prior to the amendment of 1951, was read in *Savitt v. L. & F. Construction Co.,* 124 *N. J. L.* 173 (*E. & A.* 1940), as placing upon the employer the "burden of the counsel fee payable for

service rendered in the third-party action to his ultimate profit," and to that end the term "reimbursement" had reference to "the *quantum* of the employer's statutory liability for compensation, in the sense of indemnification, rather than the payments actually made in satisfaction *pro tanto* of that obligation," and thus a "limitation of the fee for the benefit of the employer," and so were it permissible to deduct the "statutory percentage upon the full amount of the recovery had from the third party, where it exceeds the statutory compensation due the employee from the employer," the employee would be unduly advantaged. And it was pointed out that the adoption of the employer's contention that the fee was calculable on the sum actually paid "in release or in judgment" would put a premium on delay in the payment of the compensation due from the employer under the act, and thereby subvert the outstanding legislative policy. It was considered that the purpose of the statute then was the correction of "a manifest and unintentional injustice in the earlier statute, under which the injured employee could recover substantially less compensation where there was a recovery from a third-party tortfeasor than where there was none."

This case was followed by *McClare v. Tasty Baking Co.*, 127 *N. J. L.* 492 (*Sup. Ct.* 1941), affirmed 129 *N. J. L.* 98 (*E. & A.* 1942), holding that in according the employer the benefit of the third-party recovery, the attorney's fee chargeable to him, as so measured, was deductible from the *quantum* of the third-party recovery, and the remainder, less the allowance for medical expenses, credited to the employer in assessing his liability under the Compensation Act. And in the later case of *Firemen's Fund Indemnity Co. v. Batts*, 11 *N. J. Super.* 242 (*App. Div.* 1951), where the third-party recovery was far in excess of the liability for compensation, the Appellate Division, in an opinion written by Judge Jacobs, held that "as we read the express terms of *R. S.* 34:15–40, particularly paragraphs (b) and (d), the employer or his insurance carrier, under such circumstances, is entitled to a 'sum equivalent to the medical expenses incurred and

the compensation paid,' " citing the *McClare* case as supporting that view. It was suggested that if by this construction of the statute the employer "will inequitably receive the benefit of the legal services rendered in the third-party action without in anywise contributing thereto," the remedy was within the province of the lawmaking authority. This case was decided January 16, 1951; and the amendment now in force followed on June 5 of that year.

The amendment deleted from subdivision (b) of *R. S.* 34:15–40, the clause "after the expenses of suit and attorney's fee or either of them, as hereinafter defined, have been deducted therefrom," and appended to the sentence the phrase "less employee's expenses of suit and attorney's fee as hereinafter defined"; and the clause "after the expenses of suit and attorney's fee, or either of them, as hereinafter defined, have been deducted therefrom" was exscinded from subdivision (c), also the word "only," and there were added after the word "difference" the phrase "plus the employee's expenses of suit and attorney's fee as hereinafter defined," and at the end of the sentence the phrase "plus such employee's expenses of suit and attorney's fee."

And so the statute now provides that (b) if the sum recovered from the third-party tortfeasor is equivalent to or greater than the liability of the employer under the Compensation Act, the employer shall be released from such liability, "and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined"; and (c) if the sum thus recovered is less than the liability of the employer under the statute, the employer "shall be liable for the difference, plus the employee's expenses of suit and attorney's fee as hereinafter defined. and shall be entitled to be reimbursed, as hereinafter provided for so much of the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents as exceeds the amount of such dif-

ference plus such employee's expenses of suit and attorney's fee."

Subdivision (e) of the section remains unchanged; and so it is that in virtue of the amendment the employer is rendered liable for his *pro rata* share of the attorney's fee, not to exceed 33-1/3%, chargeable to the recovery had for his own benefit, within the principle of the *Savitt* case cited *supra,* for the just and equitable apportionment as between the employer and the employee of the burden attending the realization of the benefits had by each as well as to insure the essential purpose of fulfillment of the employer's obligation under the Compensation Act. Thereby, the policy of the earlier statute, related to a more limited objective then in the legislative view, primarily the avoidance of the so-called "double recovery," is given its full natural sweep in reconciling the correlative rights and duties of the respective parties. *Vide Newark Paving Co. v. Klotz,* 85 *N. J. L.* 432 (*Sup. Ct.* 1914), affirmed *sub nom. Klotz v. Newark Paving Co.,* 86 *N. J. L.* 690 (*E. & A.* 1914); *United States Casualty Co. v. Hercules Powder Co.,* 4 *N. J.* 157 (1950).

The clause "compensation payments theretofore paid" in subdivision (b) obviously has reference to reimbursement for the payments actually made, and not to the base for the assessment of the attorney's fee provided by subdivision (e). Plainly, the provision does not have the significance suggested by the employer here. The "reimbursement" there in view relates, as said in the *Savitt* case, to such portion of the recovery from the tortfeasor as is the equivalent of the "whole of the employer's liability" under the Compensation Act, "whether actually paid or not, if the recovery exceeds that liability." The failure to amend subdivision (e) implies legislative acceptance of this interpretation. To give the term "reimbursement" in this context its narrower usage would be to circumvent the outstanding legislative policy.

And it is a corollarial consequence of these considerations that the fee ratio shall not exceed that actually borne by the injured workman. Here, it was one-sixth and not

one-third of the third-party recovery. Subdivision (e) merely fixes the ceiling above which the workman may not go by contract so as to bind the employer. But where, as here, the fee is at a rate within the prescribed maximum, the employer is assessable accordingly. Such is the spirit and the indubitable reason of the statutory provision.

Counsel argues that the statute has no language supporting the employer's thesis that his "contribution cannot exceed, percentage-wise, the fee actually paid" to the employee's attorney in the tort proceeding; and it is suggested that the grievous affliction of blindness at the age of 49 "may well account for the fact" that the employee's attorneys in the third-party action "saw fit to charge" him "for their effective services a minimal fee" of one-sixth of the recovery, and the "propriety of the charge under the statute is to be judged from the standpoint of the benefit derived by the compensation carrier from the (employee's) efforts," and in legislative contemplation one-third of the "compensation carrier's total liability is a fair charge to be made against it, to the petitioner, for his successful efforts in reducing the compensation carrier's liability."

But all this pertains to matters foreign to the statute. Whatever the inducement, the fee charged and paid measures the employer's liability for the correlative benefit accruing to him, provided the ratio does not exceed 33 1/3%; this is plainly the sense and reason of the legislative expression. The fallacy of the employee's reasoning is inherent in the argument itself.

There is complaint also that the judgment of the Appellate Division "leaves open the obligation of the employer to pick up a liability of again making so-called reparative payments" under *R. S.* 34:15-12(*b*), "following the termination of the 450th week, refusing to hold that the net proceeds of the tort settlement should be applied in extinguishment of any (compensation) reparative payments to which" the employee "may be entitled."

The employer did not appeal from the judgment of the statutory tribunal providing for a continuance of such pay-

ments under *R. S.* 34:15–12(*b*), after the expiration of the 450-week period. Yet the question was raised by its cross-appeal from the County Court's judgment of affirmance; and the Appellate Division modified the judgment to provide for a reservation of "the right to make" such claim "upon the termination of the 450-week period," holding that "the purely speculative and prospective liability of the employer, if any, for such eventual compensation" is not a proper subject for present adjudication.

We are not shown that the employer has been prejudiced by this disposition. It is said on this score that if the claimant "becomes a fit subject for reparative payments he would receive double benefits, unless the net proceeds of the tort settlement be applied to the extinguishment of such reparative payments as they accrue," precisely as in the case of "compensation," and the employer "should not be obliged to pick up reparative payments following the 450-week period, until such time as the net proceeds of the tort settlement shall be exhausted."

But there is no occasion to decide that question now. Time brings changes, ofttimes decisive; and if reparative payments become a reality, then the question will be ripe for determination. There is no risk to the employer meanwhile, calling for definitive action now; at least, none is suggested.

And we concur in the conclusion of the Appellate Division that in these circumstances the allowance of an attorney's fee is within the discretionary grant of *R. S.* 34:15–64.

The provision limiting such an allowance to "that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid" is read as dealing "exclusively with the award of periodic payments of compensation," while here the employer is required "to contribute toward the fee paid" by the employee "to the lawyers handling the tort matter, in a sum greater than respondent was willing to pay," *i. e.*, greater than "one sixth of the compensation paid up to the time of the tort settlement," plus the medical charges incurred or paid, which, as we find, is inadequate. And it is urged that

under *R. S.* 34:15–20, the existence of a "dispute" as to the *quantum* of compensation is a jurisdictional *sine qua non* to the entertainment of a petition for compensation; and here the "required contribution from the employer toward the fee in the tort claim goes to the injured and not his attorney, which is quite different than the allowance of attorney's fee at trial level and on the appeal, which go to the attorney," and there was "no dispute with respect to compensation as such." The argument continues: "The mere fact that at a later time a dispute did arise relative to the amount that the employer was required to contribute toward the attorney's fee in the tort action, would not justify the earlier filing of the petition when no dispute existed"; and controversy as to the *quantum* of the employer's "contribution" did not relate to the *quantum* of "compensation to be paid by the employer to the employee" within the jurisdictional grant of *R. S.* 34:15–49.

But in these circumstances there was jurisdiction to determine the *quantum* of the employer's liability under the Compensation Act, a prerequisite to the assessment of his interest and the employee's in the third-party recovery; and it would seem to be indisputable that this issue as to the relative rights of the parties in matters of substance is not within the policy of the cited statutory provision against the allowance of attorney's fees where there is no genuine controversy. And the fee dispute here indirectly involved the *quantum* of compensation, for the result would necessarily affect the measure of the statutory benefits.

The judgment of the Appellate Division is accordingly modified and, as so modified, affirmed; and the cause is remanded for conforming proceedings.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.