117 N.J. Super. 456 (1971)
285 A.2d 68
ADELE M. SUAREZ, ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JUAN J. SUAREZ, DECEASED, PLAINTIFF-APPELLANT,
v.
JOSEPH BERG AND GEORGE BERG, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1971.
Decided December 20, 1971.
*457 Before Judges SULLIVAN, LEONARD and CARTON.
Mr. David A. Pressler argued the cause for appellant (Messrs. Okin & Pressler, attorneys).
Mr. Marvin H. Gladstone, respondent-Guardian Ad Litem, argued the cause pro se.
The opinion of the court was delivered by CARTON, J.A.D.
This case arises out of the settlement of a death action. Decedent's widow applied for apportionment of the $127,500 settlement award between herself and decedent's posthumously born daughter on the basis of 90% to her and 10% to the child. The child's guardian ad litem had suggested that two-thirds be allocated to the widow and one-third to the child. Rejecting both proposed apportionments, the court ordered that the net balance of about $90,000 be divided equally between the widow and the infant. The court also directed that the counsel fee to be allowed to the attorney be limited to 20% of the infant's share. Plaintiff challenges both rulings on this appeal.
*458 On behalf of the widow it is argued that the court failed to restrict its consideration to the statutory criteria. Specifically, her counsel argues that the court should consider only the following: the support means and support needs of the infant child for food, clothing, education and other necessaries; the availability of other sources of support (one being the financial duty and ability of the surviving parent to contribute to such maintenance); the possibility of using the income generated by the corpus awarded to the infant; and the separate estate and expectancies of the infant. The widow's attorney argues that the monetary figure representing the support needs of the child should be determined by application of these criteria and that the remaining amount of money should go to the widow.
The attorney for the widow also points to the costs of bonding on the amount awarded to the child and the expenses of making application to the court for approval of any expenditures from the child's share required to be used for her support. He urges that the court's determination rested upon improper speculation upon the prospective means of the widow and the possibility that the fund might be dissipated. It would be preferable, he maintains, to place the money in the hands of the mother of the child since there was no showing that she was "a person without gifts, without prudence or without capacity to manage," or "any question about the singleness of the mother in the interest of the child or fidelity of the mother in the interests of the child."
The guardian ad litem's recommended apportionment of about $30,000 to his ward contemplated provision for a college education at an estimated cost of $10,000 and an allowance of about $20,000 to support the child until the time she attained her majority.
The court, in refusing to adopt either suggested method of apportionment, adverted to the statutory formula for distribution prior to the adoption of the 1960 amendment to section 4 of the Death Act. The earlier statute contained no *459 provision for apportionment among persons entitled to take in the case of intestacy except a stipulation limiting the distribution to dependent beneficiaries where there were both dependent and nondependent beneficiaries. Thus, under the former statutory method of distribution one-third would go to the mother and two-thirds to the child. Commenting that such a distribution would give the child too much and the mother too little, the court said:
* * * So taking it all into consideration our thought to secure and protect both parties and particularly to secure and protect the infant so she shall have the advantage of the award to her for her pecuniary loss of her father, for her future support and maintenance, training, age twenty-one, that it should be apportioned half and half, fifty per cent to the mother and fifty per cent to the infant with the infant's share under the control of the Court. * * *
Directing that the fund be divided equally between the mother and the child, the court referred to the requirements of the present provision of section 4 of the Death Act and their interpretation in Jurman v. Samuel Braen, Inc., 47 N.J. 586, 598 (1966). Notwithstanding the fact that the court purported to follow the legislative mandate and the Supreme Court's interpretation in Jurman, plaintiff urges that it "acted arbitrarily and without regard to judicially set guidelines."
The 1960 amendment to section 4 reads as follows:
The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a *460 fair and equitable apportionment of the amount recovered. [N.J.S.A. 2A:31-4; emphasis added]
This provision implements N.J.S.A. 2A:31-5 which gives expression to the general legislative purpose of repairing the loss of reasonable expectation of pecuniary advantage suffered by the statutory beneficiaries as a result of the death of the decedent:
* * * [T]he jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death * * * to the persons entitled to any intestate personal property of the decedent. [N.J.S.A. 2A:31-5]
Although it would ordinarily appear to be desirable that a hearing, as described in Jurman, supra, at 602, be conducted upon a plenary basis, with a full development of the evidence, we conclude that the salient facts concerning the family situation and the individuals involved sufficiently appear from the record to permit resolution of the issue presented. In this connection we note that these proceedings were essentially adversary in character. The guardian ad litem not only filed a complete report based upon a full inquiry into the "particular family situation and individuals involved," but also filed a brief on this appeal in support of his recommendations.
The record discloses the following:
Decedent Juan J. Suarez, a native and citizen of Spain, but a resident of this State, died instantly on November 5, 1968 as a result of an automobile accident. He left no will. He was then 36. His wife, the plaintiff, then enceinte, was 25. They had been married less than a year. The child was born a few days after decedent's death. Decedent had a life expectancy of 35.49 years. That of Mrs. Suarez was 51.75 years.
According to the guardian ad litem's report, decedent had completed courses at the University of Heidelberg and at *461 the University of Madrid, where apparently he met his wife. He received a salary of $132 per week. As a result of the death of her husband, Mrs. Suarez received $10,000 from his group insurance. There was about $700 in a joint savings account with her husband at the time of his death. She also had, in her own name, a $4,000 savings account, the source of which was her own earnings.
Mrs. Suarez is a graduate of Paterson State College and the University of Madrid. She holds a bachelor's degree and the equivalent of a master's. Until a short time before her husband's death she was a teacher in the Newark public school system. Following her husband's death and the birth of the child, she resumed her career as a teacher, earning $10,000 a year in the Newark public school system and another $2500 a year in part-time private teaching.
The guardian ad litem, who is a member of the bar of this State, indicated that plaintiff has a deep love for her child and desires that the child receive a college education. The guardian also reported that Mrs. Suarez is attractive, well-groomed, educated, intelligent and articulate. She lives with her parents in Newark, who are self-supporting. She pays the entire rent on the one-family dwelling, amounting to $135 monthly. According to her estimate, it will cost about $90 per month to feed herself and her child. Electricity and other utilities are paid by the parents, while she pays for all her clothes and that of the child. The guardian ad litem's report reflects his confidence that the child's welfare will be a paramount consideration of the mother in the years to come. He reports that the widow is of a conservative nature and is presently seeking professional aid in investing her share of the settlement. The report gave no indication as to any future marriage plans the widow might have.
The attorney for plaintiff adds that decedent's parents reside in Spain and are people of means. He indicates that the child may, under Spanish law, ultimately receive a considerable inheritance.
*462 In N.J.S.A. 2A:31-4 the Legislature directed that the court make a division which results in an equitable apportionment, taking into consideration certain factors designated therein and "any other relevant factors which will contribute to a fair and equitable apportionment * * *." In Jurman, supra the court observed that "the statute gives the court wide discretion in arriving at a fair and equitable apportionment geared to a particular family situation and the individuals involved," and emphasized that "the court's primary interest should be to assure the child's appropriate support and maintenance." 47 N.J. at 602.
Emphasis on the respective periods of expected dependency of the widow and the child  that of the widow being almost twice that of the child  would argue for the two-to-one ratio in favor of the widow suggested by the guardian ad litem.[1] However, our statute clearly specifies that the age of the dependents (and therefore beneficiaries' relative periods of dependency) is only one of the factors to be considered. It should be noted also that dependency is not the sole basis for measuring damages in a case of this kind. The jury may consider other elements of pecuniary injury, such as loss of the care, guidance and advice of the father during the child's minority. See Frasier v. Public Service Interstate Transp. Co., 244 F.2d 668 (2 Cir.1957); Meehan v. Central R.R. Company of New Jersey, 181 F. Supp. 594 (S.D.N.Y. 1960). It is to be expected that the parties in negotiation of the settlement of such an action would do likewise.
There is no suggestion that the mental or physical health of either dependent in this case was other than *463 normal, and consequently this factor would not have any decisive effect on the manner of apportionment. The court was justified in considering the desirability of providing the child with a college education. Clearly, that factor is acknowledged as a proper one in this case. The facts also required that consideration be given to the affection of the mother for the child and the prospects of her continuing to support the child during her minority, as well as the possibility that the child might at some time come into an inheritance through decedent's family.
Likewise, the court had before it, and was entitled to give significance to, information concerning the respective financial states of the decedent and his widow, including the evident superior earning capacity of the widow, whose teaching career was apparently interrupted during the brief period of their marriage.
Plaintiff asserts that the trial court did not follow the proper guidelines in making its determination, but instead based it on irrelevant speculations as to the probability of remarriage and the possibility that the fund might be dissipated. We do not so interpret the trial court's action. It made only passing reference to such contingencies. In the order of distribution the court purported to follow the statutory mandate as interpreted in Jurman. Furthermore, under the circumstances shown by the record, particularly the lengthy period of the child's minority, it would seem unrealistic not to give some consideration to these future possibilities in the overall picture. It cannot be said as a matter of logic that they are entirely irrelevant to the issue of "assur[ing] the child's appropriate support and maintenance." Some uncertainty necessarily inheres in any estimate of future probabilities. See McStay v. Przychocki, 10 N.J. Super. 455, 458 (App. Div. 1950), aff'd 7 N.J. 456 (1951), quoting Paulmier v. Erie R.R., 34 N.J.L. 151, 158 (Sup. Ct. 1870), where the court said: "The jury must weigh probabilities and to a large extent form their estimate of damages on conjectures and uncertainties." That the remarriage *464 of the surviving widow may not be considered by the jury in determining damages in a death action appears to be predicated more on the broad policy principle that the wrongdoer is not entitled to claim the benefit of any reduction in damages which might result from a possible change in status of the surviving spouse than upon its irrelevancy. Dubil v. LaBate, 52 N.J. 255 (1968); cf. McStay v. Przychocki, supra, 10 N.J. Super. at 462. Here, although the Legislature designated certain criteria, it has also directed consideration of all other "relevant factors which will contribute to a fair and equitable apportionment."
Bearing in mind the wide range of discretion conferred by the Legislature and the admonition that a primary concern of the court in a case such as this should be to assure support and maintenance of the child, it cannot fairly be said that the court's exercise of discretion was arbitrary. We conclude that its action comported with the guidelines set forth in the statute as interpreted by Jurman.
Nor are we persuaded that the limitation of counsel fees to 20% of the infant's share was arbitrary. A memorandum which was issued to assist the trial courts in applying R. 4:44-3 suggests that absent unusual circumstances counsel fees should ordinarily be limited in such cases to 25% of the infant's share. However, there is no suggestion, let alone requirement, that such allowance should be at the maximum rate. We note further that counsel did not challenge the adequacy of the allowance at the hearing and raised this point for the first time on appeal. Under the circumstances, we see no abuse of discretion or reason for overruling the trial court.
Affirmed.
NOTES
[1] Some courts have indeed emphasized the factor of dependency in making apportionments under the statutes which contain no specific guidelines. See Annotations, "Division among beneficiaries of amount awarded by jury or received in settlement upon account of wrongful death," 14 A.L.R. 516 (1921), 112 A.L.R. 30 (1938), 171 A.L.R. 204 (1947), where numerous cases are collected which discuss this and other factors which may appropriately be considered under various types of distribution statutes.