127 N.J. Super. 231 (1974)
317 A.2d 75
MARGARET McMULLEN, ADMINISTRATRIX OF THE ESTATE OF CHARLES MC MULLEN, DECEASED, PLAINTIFF-APPELLANT,
v.
MARYLAND CASUALTY COMPANY, A CORPORATION, DEFENDANT-RESPONDENT. MARGARET MC MULLEN, ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CHARLES MC MULLEN, DECEASED, PLAINTIFF-APPELLANT,
v.
CONFORTI & EISELE, INC., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1973.
Decided March 15, 1974.
*234 Before Judges HANDLER, MEANOR and KOLE.
Messrs. Nathan Baker and Morris Schnitzer argued the cause for appellant (Messrs. Baker, Garber, Duffy & Baker, attorneys).
Mr. Edward E. Kuebler argued the cause for respondent Maryland Casualty Company.
The opinion of the court was delivered by MEANOR, J.A.D.
This case brings to us for resolution issues concerning the application of the contingent fee schedule of R. 1:21-7(c) to a tort settlement or judgment against which there is a workmen's compensation lien. The trial court's opinion is reported. McMullen v. Maryland Cas. Co., 123 N.J. Super. 248 (Law Div. 1973). We delayed our decision in this matter to await American Trial Lawyers Ass'n, etc. v. New Jersey Supreme Court, 126 N.J. Super. 577 (App. Div. 1974). It was there determined that R. 1:21-7 was valid and applicable to tort settlements and judgments occurring after its effective date of January 31, 1972, despite contrary provisions of preexisting retainers. That decision has now ripened the questions presented here.
Plaintiff's husband, Charles McMullen, was killed in the course of his employment with Beach Concrete Co. on June 11, 1969. Beach, and consequently decedent, were at the time working under a subcontract with Conforti & Eisele, Inc. A wrongful death action was brought against Conforti & Eisele, Inc., N.J.S.A. 2A:31-1 et seq., by the widow as administratrix ad pros. seeking money damages arising out *235 of the death for the benefit of herself and her children. Following the effective date of R. 1:21-7 the case was settled for $250,000.
Maryland Casualty Company apparently was both the liability and workmen's compensation carrier for Beach Concrete Co. It made workmen's compensation payments on account of McMullen's death and, we have been told, took over the Conforti & Eisele, Inc. tort defense because of an indemnity agreement between Beach and Conforti.
N.J.S.A. 34:15-40 imposes a lien in favor of an employer or his workmen's compensation carrier against the proceeds of a third-party recovery obtained by an injured workman or arising out of his death. The three leading cases construing this statute are: Teller v. Major Sales, Inc., 64 N.J. 143 (1974); Caputo v. Best Foods, 17 N.J. 259 (1955), and Dante v. Gotelli, 17 N.J. 254 (1955). These cases all involved tort recoveries obtained before R. 1:21-7 became effective, and, in light of the gloss they have placed upon the statute, the following is clear:
1. The lien is exercisable to the fullest extent possible, whether the third-party recovery be less than, equal to or greater than the lienor's compensation exposure.
2. The lienor must pay the successful plaintiff's attorney in the third-party action a fee not to exceed one-third of the amount of the lien and must contribute toward litigation expenses an amount not to exceed $200.
3. Where the fee arrangement between plaintiff and his attorney is for a fee (whether contingent or on a fee for service basis) which equals a percentage of less than one-third of the recovery, the carrier would pay only that lesser percentage of its lien as fee.
4. Where the third-party recovery equals or exceeds the total compensation exposure, the amount of the lien on which the fee is calculated is the total compensation exposure of the lienor on account of the injury or death and not merely the amount of workmen's compensation paid to the date of third party recovery.
*236 R. 1:21-7(c) provides:
In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
(1) 50% on the first $1,000 recovered;
(2) 40% on the next $2,000 recovered;
(3) 33-1/3% on the next $47,000 recovered;
(4) 20% on the next $50,000 recovered;
(5) 10% on any amount recovered over $100,000; and
(6) where the amount recovered is for the benefit of an infant or incompetent and the matter is settled without trial the foregoing limits shall apply, except that the fee on any amount recovered up to $50,000 shall not exceed 25%.
R. 1:21-7(d) requires assessment of these fees on that amount of the recovery remaining after deduction of litigation expenses, and subparagraph (f) permits an attorney who deems inadequate the fee allowed by the rule to apply to the assignment judge for an increase.
The court below applied the fee allowed by the rule to the net recovery and determined that the gross fee amounted to 16.8% of it. The court then determined that the lienor would be required to pay that percentage of its total compensation exposure as the fee for recovery of its lien. We take a different view.
Obviously, N.J.S.A. 34:15-40 was not enacted with a sliding scale contingent fee in mind. The new fee schedule, in cases of recoveries over $50,000, conflicts with the preexisting principle of equality of fee percentage between plaintiff and lienor. It was to this principle that the trial court gave full deference in holding that on their respective shares of the net recovery plaintiff and lienor would each pay 16.8% as fee. The method of calculation used by the trial court results in essentially the same overall fee as the criterion we use. However, the trial court's determination had plaintiff paying more in fees on that portion of the recovery available for distribution after deduction of the lien than *237 a plaintiff without a lien would be required to pay on the same part of the fund.
As we have pointed out above, where there is a workmen's compensation lien it must be satisfied to the fullest extent possible out of the third-party recovery. Only that part of the recovery which exceeds the lien is available for distribution to plaintiff (unless, of course, the compensation owed has not been paid completely at the time of third-party recovery, in which event compensation ceases and the full difference between the compensation paid and the total amount of compensation awarded is realized by plaintiff in lieu of further compensation payments).
Since the lienor has the prior right to payment, the lien exists on the first monies paid. Thus, the lienor, on its share of the recovery, will pay the greater of the percentages allowed by the fee schedule. Plaintiff's fee obligation will begin after the lien is paid, and will begin at that point in the fee schedule where the lien stops and plaintiff's interest begins. There is one caveat. The schedule allows 50% of the first $1,000 and 40% of the next $2,000, while N.J.S.A. 34:15-40 puts a 33-1/3% ceiling on the lienor's fee. It is not evident that R. 1:21-7 was intended to modify the statute. Thus, the statute should control and the lienor may not be made to pay more than 33-1/3% of the lien or any portion thereof as fee.
Here the lien (total compensation exposure) is $39,450. The lienor owes 33-1/3% of this amount  $13,150  as fee. N.J.S.A. 34:15-40 also provides that the lienor shall contribute up to $200 toward litigation expenses. The statute is clear that this charge is in addition to the fee required to be paid. Thus, the lienor in addition to the fee will be required to pay $200 toward litigation costs.
Total litigation expenses were $1,390. The $200 expense contribution from the carrier reduces the litigation expenses chargeable to plaintiff from $1,390 to $1,190. Deducting the latter amount from the gross settlement leaves a total fund of $248,810 on which to calculate the fees. The fee on *238 the first $39,450 to be paid by the lienor has already been set forth. Since the plaintiff's obligation begins where the lienor's ends, the fees here will be:
(a) One-third of the lien of $39,450 or $13,150.
(b) One-third of $10,550 (i.e., the difference between the lien of $39,450 and $50,000) .... $3,516.67.
(c) 20% of the next $50,000 .... $10,000.
(d) 10% of the net recovery over $100,000 or 10% of $148,810.... $14,881.
The lienor owes $13,150 in fees and $200 toward litigation expenses. The plaintiff owes $28,397.67 in fees and $1,190 in litigation costs. This result renders moot in this case the argument advanced that the lienor's share of the recovery is not subject to the fee schedule because of the subrogation exception set forth in it.
Under our Death Act, in cases of intestacy an action for damages arising out of a wrongful death may be brought only by an administrator ad pros. specially appointed for that purpose. N.J.S.A. 2A:31-2. If the decedent dies testate, his executor may bring the action. In cases of intestacy payment is always to the general administrator of the estate, never to the administrator ad pros. N.J.S.A. 2A:31-6. No matter who brings the action, recovery is effectuated in one lump sum representing past and future economic loss to the class of beneficiaries entitled to share in the proceeds of the action. This class consists of "the persons entitled to take any intestate personal property of the decedent." N.J.S.A. 2A:31-4. The statute goes on to provide that if any members of the class were dependent upon decedent, they shall take to the exclusion of any non-dependent members of the class.
Once the lump-sum recovery is obtained, whether by way of settlement or judgment, the trial court must hold a hearing without a jury in order to apportion the fund equitably among the members of the class entitled to share in it. N.J.S.A. 2A:31-4. See Jurman v. Samuel Braen, Inc., *239 47 N.J. 586, 598 (1966), and Suarez v. Berg, 117 N.J. Super. 456 (App. Div. 1971).
The settlement here was apportioned among plaintiff and her children pursuant to N.J.S.A. 2A:31-4. The argument is advanced that each distributive share represents a separate recovery and that the fee schedule should be applied to each fund after its division among the beneficiaries. We reject the contention. The rule assesses a sliding scale fee based on varying percentages of the amount "recovered." There were no separate recoveries for each beneficiary and cannot be. The beneficiaries have no right to sue individually to recover their respective losses. All that our statute permits is a lump-sum recovery by one suing in a representative capacity, the sum later to be divided equitably among those entitled to benefit from it. Since under our Death Act there can be only one "recovery," the fee schedule is to be applied to the total amount received, no matter how many beneficiaries are entitled to share in it, and not to the amounts of the various shares after distribution is determined.
What we have said above applies with equal force to the thought that some portion of the settlement here is subject to R. 1:21-7(c) (6) which limits fees to not more than 25% on amounts recovered by way of settlement for the benefit of infants and incompetents.[*] We think the rule basically was aimed at those situations, all subject to judicial approval, where a specific settlement is obtained because of a tort committed against the person or property of an infant or incompetent and was not intended to apply to wrongful death recoveries where the class of beneficiaries included one or more adults. It may be that the 25% limitation is applicable to a wrongful death recovery where all the beneficiaries are infants or incompetents  a point on which we *240 do not rule. If that is so and a workmen's compensation lien exists against the recovery, the highest fee percentage that could be charged the lienor would be 25%.
Thus, we vacate the judgment below and remand the matter for the assessment and allowance of fees and expenses as set forth in this opinion. Since the result reached increases the amount available for equitable distribution among the widow and children, the distributive shares will have to be adjusted accordingly.
Vacated and remanded.
NOTES
[*] See, however, Teller v. Major Sales, Inc., supra, 64 N.J. at 145, n. 1, and Suarez v. Berg, supra, 117 N.J. Super. at 464, both of which involved settlements consummated prior to R. 1:21-7.