668 A.2d 482

ROSE GERSZBERG, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SHEPHERD GERSZBERG, DECEASED, AND AS GUARDIAN AD LITEM OF EPHRAIM GERSZBERG, A MINOR, JONATHAN GERSZBERG, A MINOR, AND NAOMI GERSZBERG, A MINOR, AND SETH GERSZBERG, PLAINTIFF–APPELLANT, v. JACUZZI WHIRLPOOL BATH AND TOMS RIVER PLUMBING & HEATING SUPPLY, INC., DEFENDANTS.

O'CONNOR & RHATICAN, ESQS., RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 29, 1995—Decided December 27, 1995.

Before Judges KING, LANDAU and KLEINER.

*Dennis S. Deutsch* argued the cause for appellant (*Ferrara, Turitz, Harraka & Goldberg*, attorneys; *Mr. Deutsch*, on the brief).

*Gerald B. O'Connor* argued the cause for respondents (*O'Connor & Rhatican*, attorneys; *Mr. O'Connor*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This appeal by plaintiff Rose Gerszberg, individually and as executrix of the estate of Shepherd Gerszberg, deceased, is taken from part of a final Law Division order of distribution dated November 7, 1994. The order apportioned, under *N.J.S.A.* 2A:31–4, net proceeds of the $300,000 settlement of a wrongful death action (*N.J.S.A.* 2A:31-1) in which plaintiff was represented by respondents O'Connor and Rhatican, Esqs. Respondents cross-appealed but did not pursue the cross-appeal in their brief and argument.

The order first approved deduction of respondents' reasonable out-of-pocket expenses, leaving $279,575. Upon recommendation of the court-appointed guardian *ad litem*, that sum was allocated in five equal parts of $55,915, before counsel fees, among decedent's wife Rose and their four children, Seth, Ephraim, Jonathan and Naomi.

Next, the order awarded $87,786 in counsel fees to respondents, purportedly calculated in accordance with *R.* 1:21–7, with a "specific reduction" to twenty-five percent for the allocation to Naomi,

who was a minor at the time of allocation.[1] The counsel fee award is the subject of this appeal. We affirm the result.

Appellant executrix argues that the court erred in failing to consider dispositive a retainer agreement that she entered into individually and as "Administratrix" [sic][2] of the estate, and as guardian *ad litem* of her four children. In support of this argument, appellant's appendix contained an unsigned All–State Legal Fee Agreement form. In that form, a check mark appears next to a box in paragraph five which purports to read, as amended by hand, "The legal fees will be reduced to 25% of the net recovery if this matter is settled without trial on behalf of any of the children of Shepherd Gerszberg." Respondents' appendix contains what purports to be a *signed* agreement, on the same All–State form, in which no check marks are made and no handwritten amendments appear. Each form provides for the standard contingent fee allowed by *R.* 1:21–7, namely 33⅓ of the first $250,000 recovered, 25% of the next $250,000 recovered, and 20% of the next $500,000 recovered.

In order to address appellant's claim of error, we must first note that the trial judge erred in dividing the net settlement into five equal shares *before* subtracting counsel fees. This procedure could have resulted in the improper application of a 33⅓%[3] contingent fee to the entire net settlement of $279,575. As appellant challenges the counsel fee award because the equitable distributees under the Death Act apportionment included one or more minors, we refer to settled principles recently revisited in *In*

---

[1] Presumably based upon *R.* 1:21–7(c)(5) which provides:

"where the amount recovered is for the benefit of a client who was a minor or incompetent when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by *settlement without trial shall not exceed 25%.*"

[2] Decedent died testate.

[3] The judge actually used only thirty-three percent, for reasons that are not clear to us.

*re Estate of Travarelli,* 283 *N.J.Super.* 431, 662 *A.*2d 572 (1995).
*Travarelli* reaffirmed that there is only one wrongful death claim,
and only one recovery for that claim on which to base a contingent
fee. *Id.* at 439–40, 662 *A.*2d 572.

We repeat the comprehensive explanation set forth in *McMul-
len v. Maryland Casualty Co.,* 127 *N.J.Super.* 231, 238–39, 317
*A.*2d 75 (1974), *aff'd sub nom. McMullen v. Conforti & Eisele,
Inc.,* 67 *N.J.* 416, 341 *A.*2d 334 (1975), and quoted in *Travarelli:*

> Under our Death Act, in cases of intestacy an action for damages arising out of a
> wrongful death may be brought only by an administrator *ad pros.* specially
> appointed for that purpose. *N.J.S.A.* 2A:31–2. If the decedent dies testate, his
> executor may bring the action. In cases of intestacy payment is always to the
> general administrator of the estate, never to the administrator *ad pros. N.J.S.A.*
> 2A:31–6. No matter who brings the action, recovery is effectuated in one lump
> sum representing past and future economic loss to the class of beneficiaries entitled
> to share in the proceeds of the action. This class consists of "the persons entitled
> to take any intestate personal property of the decedent." *N.J.S.A.* 2A:31–4. The
> statute goes on to provide that if any members of the class were dependent upon
> decedent, they shall take to the exclusion of any non-dependent members of the
> class.

> Once the lump-sum recovery is obtained, whether by way of settlement or
> judgment, the trial court must hold a hearing without a jury in order to apportion
> the fund equitably among the members of the class entitled to share in it. *N.J.S.A.*
> 2A:31–4. *See Jurman v. Samuel Braen, Inc.,* 47 *N.J.* 586, 598 [222 *A.*2d 78] (1966),
> and *Suarez v. Berg,* 117 *N.J.Super.* 456 [285 *A.*2d 68] (1971).

> The settlement here was apportioned among plaintiff and her children pursuant
> to *N.J.S.A.* 2A:31–4. The argument is advanced that each distributive share
> represents a separate recovery and that the fee schedule should be applied to each
> fund after its division among the beneficiaries. We reject the contention. The rule
> assesses a sliding scale fee based on varying percentages of the amount "recov-
> ered." There were no separate recoveries for each beneficiary and cannot be. The
> beneficiaries have no right to sue individually to recover their respective losses.
> All that our statute permits is a lump-sum recovery by one suing in a representa-
> tive capacity, the sum later to be divided equitably among those entitled to benefit
> from it. Since under our Death Act there can be only one "recovery," the fee
> schedule is to be applied to the total amount received, no matter how many
> beneficiaries are entitled to share in it, and not to the amounts of the various
> shares after distribution is determined.

Applying the *R.* 1:21–7 formula incorporated in the fee agree-
ment to the net settlement, as mandated by *Travarelli* and

*McMullen,* would produce a maximum allowable counsel fee[4] computed as follows:

$$33\tfrac{1}{3}\% \text{ of } \$250,000 = \$83,333.33$$
$$25\% \text{ of } \$29,575 = \$\ 7,393.75$$
$$\underline{R.\ 1{:}21{-}7 \text{ fee:}} \qquad \$90,727.08$$

Respondents' application submitted below requested that the court fix a fee in accordance with this formulation. Thus, even if a reduction in fee were deemed appropriate or compelled because of the age of any distributee, $90,727.08 should have been the starting point.

Our calculations indicate that the judge instead took $13,379, i.e., 25% of the one-fifth distribution of $55,915 he allocated to the one child who is presently a minor, and added that to the $73,807 sum arrived at by applying 33% (not 33⅓%) to $223,660, representing all the other distributions. He thus arrived at the $87,786 counsel fee award here under review. Had there been no minor distributee, however, the same procedure would have resulted in a $93,191 award of counsel fees, excessive by $2464, i.e., the difference between $9858 (33⅓% of the $29,575 in excess of $250,000) and $7394 (25% of $29,575).

Appellant contends: (1) that the fee award was entered in disregard of the unsigned, amended version of the initial fee agreement submitted in her appendix; and (2) that if a reduction to twenty-five percent of net recovery was warranted as to Naomi, who was a minor at the time of the order of distribution under *N.J.S.A.* 2A:31–4,[5] then the court should have applied the twenty-

---

[4] Subject only to the special application procedure for additional fees provided for under *R.* 1:21–7(f).

[5] *N.J.S.A.* 2A:31–4 provides:

The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court

five percent maximum fee (provided under *R.* 1:21–7(c)(5) where an amount recovered by settlement is for the benefit of a client who was a minor when the contingent fee arrangement was made) to the entire settlement.

It is unnecessary to resolve the variance between the signed and unsigned versions of the retainer agreement. As *McMullen, supra,* makes clear, "[t]here were no separate recoveries for each beneficiary and cannot be. The beneficiaries have no right to sue individually to recover their respective losses." 127 *N.J.Super.* at 239, 317 *A.2d* 75. Thus the matter was not "settled without trial on behalf of any of the children of Shepherd Gerszberg." Rather there was a Death Act recovery by the executrix who sued in a representative capacity, subject to later equitable division among those entitled to benefit, pursuant to *N.J.S.A.* 2A:31–4.

As to appellant's second argument, it is true that the relevant date for determination of minority under *R.* 1:21–7(c)(5) is the date of execution of the contingent fee agreement on behalf of those for whose benefit the agreement was made. All four Gerszberg children were under eighteen at that time. Thus, if a reduction to twenty-five percent was indeed required by reason of Naomi's minority, it would appear also to have been required as to her siblings. However, after noting that *Suarez v. Berg,* 117 *N.J.Super.* 456, 285 *A.2d* 68 (1971),[6] the authority relied on by

---

without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered.

[6] In *Suarez,* the attorney's challenge to the counsel fee award was raised for the first time on appeal, and rejected on that basis. *Suarez, supra,* 117 *N.J.Super.* at 464, 285 *A.2d* 68.

appellants, was decided before *R.* 1:21–7 was adopted, we later said in *McMullen* that "[s]ince under our Death Act there can only be one 'recovery,' the fee schedule is to be applied to the total amount received [by the one suing in a representative capacity], no matter how many beneficiaries are entitled to share in it, and not to the amounts of the various shares after distribution is determined." *McMullen, supra,* 127 *N.J.Super.* at 239, 317 *A.*2d 75.

> We went on to make clear that the
> above applies with equal force to the thought that some portion of the settlement here is subject to *R.* 1:21–7(c)(6) [7] which limits fees to not more than 25% on amounts recovered by way of settlement for the benefit of infants and incompetents. We think the rule basically was aimed at those situations, all subject to judicial approval, where a specific settlement is obtained because of a tort committed against the person or property of an infant or incompetent and was not intended to apply to wrongful death recoveries where the class of beneficiaries included one or more adults.
>
> *[Ibid.* (footnote omitted) (our footnote 7 added).]

*McMullen*'s clear articulation has stood for twenty years without modification by rule or subsequent case law. We are not inclined to readdress the issue, particularly as there is nothing in this record to suggest that the trial judge failed to exercise reasonable discretion.

The *N.J.S.A.* 2A:31–4 apportionment was made here primarily to the children, apparently for estate planning reasons upon request of the spouse/executrix. In many cases, it instead might as easily have been molded to award the largest part of the amount recovered to the surviving spouse. There presently appear to us no compelling equitable reasons why an attorney's fee should turn on such external factors, unless all possible distributees were minors when the fee agreement was executed.

The underlying wrongful death action involved a products liability claim against the manufacturer and distributor of a whirlpool hot-tub in which the decedent had bathed shortly before suffering

---

[7] Now *R.* 1:21–7(c)(5).

a fatal heart attack. If anything, the extent and originality of legal effort involved in achieving this settlement might have warranted a *R.* 1:21–7(f) fee award.

The award of $87,786 in counsel fees falls well within the amount allowed by *Rule* 1:21–7 and the retainer agreement, as above interpreted.

We see no indication of an inequitable result. Inasmuch as respondents have not pursued their cross-appeal, we affirm the result, but not the reasoning, embodied in the portion of the judgment from which the appeal was taken.

Affirmed.