NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0112-17T4

LIBERTY MUTUAL INSURANCE
o/b/o SABERT CORPORATION,

    Plaintiff-Respondent,

v.

JOSE R. RODRIGUEZ,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**April 2, 2019**

**APPELLATE DIVISION**

Argued January 15, 2019 – Decided April 2, 2019

Before Judges Fisher, Suter and Firko.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2564-17.

David H. Lande argued the cause for appellant (Law Offices of Gill & Chamas, attorneys; David H. Lande, on the brief).

Betsy G. Ramos argued the cause for respondent (Capehart & Scatchard, PA, attorneys; Betsy G. Ramos, of counsel and on the brief).

James M. Clancy argued the cause for amicus curiae New Jersey Advisory Council on Safety and Health (Borbi, Clancy & Patrizi, attorneys; James M. Clancy, on the brief).

The opinion of the court was delivered by

FIRKO, J.S.C. (temporarily assigned).

Defendant Jose R. Rodriguez (Rodriguez) appeals from an order entered by the trial court granting plaintiff Liberty Mutual Insurance's (Liberty) application for reimbursement for its workers' compensation benefits paid to Rodriguez from his third-party recovery based on the fee ratio calculated for the overall settlement and not the sliding scale set forth in Rule 1:21-7. We affirm.

The relevant facts are not disputed and the matter was ripe for disposition. See, e.g., Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Rodriguez was injured during the course of his employment at Sabert Corporation in 2012. Liberty was the workers' compensation carrier for Sabert. Rodriguez retained the Gill & Chamas law firm (law firm) to represent him in his workers' compensation matter and the third-party action against the tortfeasor. Rodriguez entered into an Agreement to Provide Legal Services in 2002 that provided the law firm would receive a fee, under the 2012 version of Rule 1:21-7(c), as follows:

> (1) 33[.33]% of the first $500,000 recovered;
>
> (2) 30% on the next $500,000 recovered;
>
> (3) 25% on the next $500,000 recovered;

(4) 20% on the next $500,000 recovered; and

(5) on all amounts recovered in excess of the above by application for a reasonable fee in accordance with the provisions of paragraph (f) hereof.[1]

A settlement was achieved on behalf of Rodriguez with the tortfeasor for $1.2 million dollars. The parties stipulated that Rodriguez's workers' compensation benefits totaled $148,590.40.[2] Liberty asserted its rights to reimbursement of its lien under N.J.S.A. 34:15-40(b) (Section 40) from the third-party settlement. Section 40 makes clear that the remedies provided the employee by the workers' compensation laws do not preclude an employee from pursuing damages from a tortfeasor, referred to in Section 40 as the "third person":

> In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided.

---

[1] Rule 1:21-7(c) was amended in 2014 and the sliding scale now applies to the first $750,000 recovered.

[2] It is undisputed that $129,488.46 was paid on behalf of Rodriguez for medical expenses and $19,101.94 in indemnity for a total of $148,590.40.

In this statutory scheme, Section 40 then provides for reimbursement to the employer or its insurance carrier when an employee receives a recovery from the third person in the following way:

> If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined.

The law firm sent Liberty a check for $98,310.26, net of its attorney's fees, calculated at 33.33% and costs, denoting it as "payment in full." The $98,310.26 check amounted to only 66.67% of the $148,590.40 in workers' compensation benefits, and not 69.44%. Liberty disagreed with that calculation, and asserted the law firm was only entitled to an attorney fee calculated at 30.56%, or the sum of $102,431.17, because the overall percentage paid by Rodriguez in fees was 30.56%, plus $750 for expenses of suit.[3]

---

[3] N.J.S.A. 34:15-40(e) provides:

> As used in this section, "expenses of suit" shall mean such expenses, but not in excess of $750 and

(continued)

4

In arriving at its calculation, Liberty argued that in the third-party action, the law firm was entitled to 33.33% of the first $500,000 recovered, or $166,666.67; 30% of the next $500,000 recovered, or $150,000; and 25% of the remaining $200,000 recovered, or $50,000, for a total fee of $366,666.67. The third-party counsel fee equaled 30.56% of Rodriguez's $1.2 million settlement. Liberty filed an order to show cause and verified complaint on behalf of Sabert Corporation seeking reimbursement of the difference, $4120.91, claiming that the percentage should be calculated based upon the actual fee paid and not the settlement recovered. Rodriguez opposed the application.[4]

The trial judge determined that:

> [Rodriguez] paid $366,666.67 in attorney's fees, which constitutes 30.56[%] of his settlement. This 30.56[%] is less than the 33[.33] limit of the statute and

---

(continued)

> "attorney's fee" shall mean such fee, but not in excess of 33.33% of that part of the sum paid in release or in judgment to the injured employee or his dependents by such third person or his insurance carrier to which the employer or his insurance carrier shall be entitled in reimbursement under the provisions of this section, but on all sums in excess thereof, this percentage shall not be binding.

[4] The record indicates that no adjudication of permanency had been made at the time the order to show cause and verified complaint were filed. This was confirmed by counsel at the time of oral argument.

therefore represents the percentage of attorney's fees that [Rodriguez] is responsible for. <u>Caputo v. Best Foods, Inc.</u>, 17 N.J. 259[, 268 (1955)].

The fee ratio shall not exceed that actually borne by the insured.

Accordingly, the [c]ourt finds that [Rodriguez] is to reimburse $102,431.17 for the worker[s'] compensation benefits to [Liberty] based upon a reimbursement rate of 69.44[%] and subtracting $750 of court expenses.

As [Rodriguez] has already reimbursed [Liberty] in the amount of $98,310.26, the [c]ourt orders [Rodriguez] to reimburse [Liberty] the outstanding $4120.91.

Rodriguez was assessed a 69.44% credit against future workers' compensation benefits paid on his behalf.

The trial judge found that Rodriguez's reliance on <u>McMullen v. Maryland Casualty Company</u>, 127 N.J. Super. 231 (App. Div. 1974) was "misplaced" because:

> Taking into account the three leading cases construing N.J.S.A. 34:15-40 of <u>Teller v. Major Sales Inc.</u>, 64 N.J. 143 (1974); <u>Caputo</u> [], 17 N.J. 259 []; and <u>Dante v. Gotelli</u>, 17 N.J. 254 (1955), the [A]ppellate [D]ivision in <u>McMullen</u> noted that although these cases all involved tort recoveries obtained before <u>Rule</u> 1:21-7 became effective, the following is clear. Where the fee arrangement between plaintiff and his attorney is for a fee whether contingent or on a fee for service basis which equals a percentage of less than one-third of the recovery, the carrier would pay only a

6

> lesser percentage of his lien as a fee[.]  McMullen,
> 127 N.J. Super. at 235.
>
> And calculating the employer's pro rata shares of
> attorney's fees, the [A]ppellate [D]ivision in
> McMullen found the lien or share to be 33[.33%] of
> the employee's total compensation exposure.

Recognizing that the McMullen court concluded that "it is not evident that Rule 1:21-7 was intended to modify the statute, the statute should control and the lienor should not be made to pay more than 33 and a third of the lien or any portion thereof as a fee," the trial judge disavowed that holding and relied upon Caputo.

In his appeal, Rodriguez argues that the trial judge erred in ruling that the pro rata share of attorney's fees should be determined using a gross average of the sliding scale attorney's fees paid in the third-party case rather than the sliding scale basis set forth in Rule 1:21-7 and the Agreement to Provide Legal Services.  Because Section 40 was enacted prior to the implementation of the sliding scale contingent fee, Rule 1:21-7(c), Rodriguez argues that case law is precedential on this issue.[5]  Liberty argues that Rodriguez ignores the fact that the total percentage of fees paid equaled 30.56% of the $1.2 million settlement ($1,200,000 divided by $366,666.67 equals 30.56%), and not at the sliding

---

[5]  Rule 1:21-7(c) became effective January 31, 1972.

scale rate of 33.33% applicable to the first level of the sliding scale of Rule 1:21-7, which is the first $500,000 recovered, relying upon McMullen.

We are convinced that the arguments raised on appeal lack merit. Our Supreme Court in Caputo held:

> subdivision (b) obviously has reference to reimbursement for the payments actually made, and not to the base for the assessment of the attorney's fee provided by subdivision (e) . . . . [Therefore] the fee ratio shall not exceed that actually borne by the injured workman.
>
> [17 N.J. at 267 (emphasis added).]

In Teller v. Major Sales, Inc., 64 N.J. 143, 148 (1974) our Supreme Court cited Caputo with approval. The defendant (employer) paid the plaintiff (employee) $30,238.50 in workers' compensation benefits in Teller, and $75,000 was recovered in a third-party action. Id. at 144. Applying Rule 1:21-7(c) yielded a $21,111.09 contingent fee, or 28.14% of the $75,000 amount. Id. at 144-45. Our Supreme Court held that pursuant to N.J.S.A. 34:15-40(b), the defendant-employer's pro rata share was 28.14% of the $30,238.50 "to which the attorney's fee in the third-party settlement actually worked out." Id. at 148.[6]

---

[6] The net effect was the defendant-employer (or its workers' compensation carrier) paid $8509.11 towards the counsel fee in the third-party action.

Rodriguez argues that our decision in McMullen, decided two months after Teller, should apply here. The trial judge held—and we agree—that Caputo is the controlling authority in deciding that the fee should be 30.56% for recovery of Liberty's lien. We are mindful that the McMullen court took a different view.

We are not bound by our earlier decisions because we do not sit en banc. Pressler and Verniero, Current N.J. Court Rules, cmt. 3.3 on R.1:36-3 (2019). But our Supreme Court decisions, such as Caputo, bind us and all trial courts. "Because we are an intermediate appellate court, we are bound to follow the law as it has been expressed by . . . our Supreme Court." Lake Valley Assocs., LLC v. Twp. of Pemberton, 411 N.J. Super. 501, 507 (App. Div. 2010). We must adhere to Caputo notwithstanding the contrary conclusion reached in McMullen. See David v. Gov't Emps. Ins. Co., 360 N.J. Super. 127, 142 (App. Div. 2003).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION